QUETEL CORPORATION, Plaintiff,

v.

COLUMBIA COMMUNICATIONS
INTERNATIONAL, INC., et
al., Defendants.

Civ. A. No. 91–2658 (CRR).

United States District Court,
District of Columbia.

March 20, 1992.

J. William Koegel, Jr. of Steptoe & Johnson, Washington, D.C., for plaintiff.

David B. Durbin of Jordan, Coyne, Savits & Lopata, Washington, D.C., for defendants.

MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before this Court is a Motion for Summary Judgment filed by those Defendants who are partners of the law firm Cohen,

Todd, Kite and Stanford ("Cohen, Todd").[1] Upon further consideration of Defendant Cohen, Todd's Motion for Summary Judgment, Plaintiff QueTel's opposition thereto, the applicable law and the entire record herein, the Court shall grant Defendant's Motion pursuant to Federal Rule of Civil Procedure 56.

## I. Background

In 1988 Plaintiff QueTel entered into a subcontract with Defendant Columbia Communications International, Inc. ("CCI")[2] to supply materials to CCI pursuant to CCI's prime contract with the United States Department of State ("State Department"). During the performance of the subcontract, difficulties arose with respect to payments from CCI to QueTel for services and/or equipment. To address that problem, QueTel, CCI and CCI's law firm, Cohen, Todd, arranged for a payment procedure, primarily an escrow agreement.

According to the November 1988 escrow agreement, an account was to be opened at the Fifth Third Bank ("the Bank") in Cincinnati, Ohio. Thereafter, the State Department was to deposit funds owed to CCI in the account, and Cohen, Todd, acting as escrow agent of the account, was to subsequently disburse payments owed by CCI to QueTel. *See* Pltf. Complaint, Ex. 8.

The escrow account described in the agreement was opened in November 1988 with an initial deposit of $100. No additional funds were ever deposited in the account. In fact, the monthly service charges of the Bank depleted the account until, by October 1989, it had no remaining balance. *See* Cohen, Todd's Memo at 3; Affidavit of Robert M. Erickson at ¶ 3 ("Erickson Aff."). Although no deposits were made, CCI did make payments to QueTel in

1989 and 1990, presumably independently of the escrow account mechanism. In December of 1990, however, QueTel did not receive payment. *See* Pltf. Complaint at ¶ 13–14; Pltf. Reply at 2.

Because QueTel believed that both CCI and Cohen, Todd were responsible for payment, this action ensued. Of sole concern for this Court are Plaintiff QueTel's allegations against Defendant Cohen, Todd. Specifically, QueTel alleges that Cohen, Todd breached the escrow contract entered into with CCI and QueTel, and that Cohen, Todd committed malpractice by negligently failing to fulfill its contractual duty. *See* Pltf. Complaint at 5–7; Pltf. Opposition at 2 ("Pltf.Opp.").

## II. Analysis

Summary judgment is awarded when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Where there is a properly supported motion for summary judgment, the adverse party may not rest upon the "mere allegations of denial" of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Lujan v. National Wildlife Federation,* 497 U.S. 871, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990). The moving party is also entitled to summary judgment upon a showing that there is an absence of evidence supporting an essential element of the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

---

**1.** Cohen, Todd is the law firm which represented Defendant Columbia Communications International, Inc. ("CCI") at the time the events which preceded this lawsuit took place. Specifically named Defendants include Thomas N. Bergman, Michael J. Boylan, John G. Cobey, Alfred M. Cohen, Burgess L. Doan, William T. Hayden, Edward A. Hogan, Thomas C. Kilcoyne, William M. Kite, Terrence A. Mire, Todd B. Portune, Marc W. Rubin, Stanley L. Stanford, David H. Todd, and Gary L. Yerke. The Court will refer to this group of Defendants as "Cohen, Todd".

**2.** At the present time, neither Defendant CCI nor Defendant Christine Davis (president and principal owner of CCI) have been served by process. *See* Pltf. Complaint (absence of notice and summons to the aforementioned Defendants); Cohen, Todd's Memorandum in Support of Motion for Summary Judgment at 4 ("Cohen, Todd's Memo").

## A. BREACH OF CONTRACT

QueTel's breach of contract claim essentially alleges that Cohen, Todd had a contractual obligation to establish and administer the escrow account in a manner consistent with the November 1988 agreement. *See* Pltf. Complaint at 5; Pltf.Opp. at 14–15. QueTel asserts that Cohen, Todd initially breached its obligation when the "wrong account number" was opened at the Bank. *See* Pltf. Statement of Material Facts at ¶ 3 ("Pltf. Mat. Facts"). According to the escrow agreement, Cohen, Todd was to act as sole signatory on Account # 771–51156, and the State Department was to pay monies owed to CCI into that same account. In actuality, John G. Cobey of Cohen, Todd opened Account # 711–51156. QueTel alleges that because Cohen, Todd opened the wrong account number, the State Department was precluded from making payments into the account. *See* Pltf.Opp. at 15; Pltf. Mat. Facts at ¶ 3.

The Court finds nothing in the record that supports QueTel's allegations. The record shows that Defendant Cohen, Todd opened bank account number 711–51156. Cohen, Todd has provided evidence demonstrating that this in fact was not the wrong account number. Rather, as Cohen, Todd's evidence suggests, transposed prefix numbers, such as "771" in place of "711", do occur occasionally as typographical errors. *See* Erickson Aff. at ¶ 4. The Bank has never had an account numbered 771–51156 in the name of any person or entity, nor would that account number ever be assigned. This is because the three-digit prefix "771–" does not correspond to any account prefix used by the Bank. *Id.* It is the Court's finding that Cohen, Todd did not in fact open the wrong account number, rather a typographical error was made on the escrow agreement. This typographical error did not impair the State Department from making deposits in the escrow account. Cohen, Todd has provided unrebutted testimony from a senior trust officer of the Bank indicating that any payments or transfers directed to an account number with the prefix "771–" would be routed to an actual account with the "711–" prefix. *Id.* Plaintiff QueTel has offered no evidence to the contrary in support of its claim that the State Department was precluded from making deposits in the account, nor is there any statement or document from the State Department in the record indicating there was any such preclusion in fact.

QueTel also claims that Cohen, Todd "was responsible for insuring that it received payments into its escrow account ..." Pltf. Mat. Facts at ¶ 6. By failing to secure deposits for the escrow account, Cohen, Todd allegedly breached a contractual duty. The Court finds that QueTel has misinterpreted Cohen, Todd's duty in this regard. As the escrow agreement makes clear, Cohen, Todd had a duty to act as sole signatory on the account and to disburse funds to QueTel. The agreement read, in pertinent part:

> Within two working days following receipt of the monies and clearing of the payment from the State Department ... a law partner from (Cohen, Todd) ... will authorize the bank to send payment by wire to QueTel ...

*See* Pltf. Complaint, Ex. 8. Nothing in the agreement, or the affidavits of those involved in formulating the agreement, imposed a duty on Cohen, Todd to insure the deposit of funds in the account by the State Department. In fact, the agreement calls for deposit instructions to be given to the State Department by CCI. Accordingly, Cohen, Todd's contractual obligation could not arise until the State Department deposited funds in the account per instructions from CCI. Because this event never occurred, Cohen, Todd's duty under the contract never arose.

As a final element of its breach of contract claim, QueTel alleges that "Cohen, Todd knowingly failed to inform QueTel that it had not disbursed payments to QueTel (as QueTel believed), or that the State Department payments were not being deposited into Cohen, Todd's escrow account (as QueTel also believed)." Pltf.Opp. at 16. QueTel asserts that although payments were received directly from CCI during 1989 and 1990 (up until December), Cohen, Todd had a duty to inform QueTel that the

**4**

agreement was not being complied with and that "Cohen, Todd was not 'in the loop' to disburse payments to QueTel." *Id.* Once again, QueTel has misconstrued Cohen, Todd's duty arising from the escrow agreement. Cohen, Todd's obligations did not include notifying QueTel of the status of the escrow account or the source of any payments made for services and/or equipment. Because an express condition precedent to Cohen, Todd's duty never occurred; that is, the State Department never deposited funds into the account opened at the Bank, Cohen, Todd's contractual duty never arose.

In sum, QueTel has not presented any material factual dispute as to Cohen, Todd's contractual duties. Those duties are set forth in the plain language of the November 1988 escrow agreement and were conditioned upon the payment of monies by the State Department into the Bank. Since that condition precedent undisputedly never occurred, there existed no duties running from Cohen, Todd to QueTel that could have been breached.

**B. MALPRACTICE**

◼ In any malpractice or negligence action, the plaintiff must demonstrate a breach of duty owed by the defendant to the plaintiff. *See Law Offices of Jerris Leonard v. Mideast Systems, Ltd.,* 111 F.R.D. 359, 362 (D.D.C.1986). In this action, QueTel claims that Cohen, Todd's duty arises out of the November 1988 escrow agreement. *See* Pltf. Complaint at 6–7; Pltf.Opp. at 2. As the Court determined above, QueTel has failed to demonstrate that Cohen, Todd owed a duty to QueTel under the contract since the condition precedent to any such duty, the deposit of funds in the escrow account by the State Department, did not occur. It follows that QueTel cannot maintain a claim for malpractice against Cohen, Todd which is premised on that contract.

Even assuming, *arguendo,* that Cohen, Todd did in fact owe a duty to QueTel arising out of the escrow agreement, QueTel would not have an actionable legal malpractice claim.

◼ The specific requirements of an actionable legal malpractice claim differ in Ohio and the District of Columbia (the two jurisdictions intertwined with the events of this case). Under Ohio law, an attorney may not be held liable by a third party unless the third party is in privity with the client for whom the legal services were performed regarding the transaction at issue. *Simon v. Zipperstein,* 32 Ohio St.3d 74, 512 N.E.2d 636 (1987); *Scholler v. Scholler,* 10 Ohio St.3d 98, 462 N.E.2d 158 (1984). Under District of Columbia law, a third party may bring a legal malpractice claim if he or she is a direct and intended beneficiary of the transaction at issue. *Needham v. Hamilton,* 459 A.2d 1060 (D.C.1983).

Because there is an apparent conflict between Ohio law and the District of Columbia law, the Court must apply a "governmental interest analysis" to determine which jurisdiction's law should apply. *Bledsoe v. Crowley,* 849 F.2d 639 (D.C.Cir. 1988); *Kaiser–Georgetown Community v. Stutsman,* 491 A.2d 502 (D.C.1985). This analysis includes an evaluation of the governmental policies underlying the applicable laws, as well as an identification of the jurisdiction with the most significant relationship to the dispute. *See Hercules & Co. v. Shama Restaurant Corp.,* 566 A.2d 31, 40–41 (D.C.1989); *Williams v. Williams,* 390 A.2d 4, 5–6 (D.C.1978).

In the current case, the "governmental interest analysis" indicates that Ohio law should apply. Defendant Cohen, Todd is located in Ohio. The Bank where the escrow account at issue in this case was held is also located in Ohio. The authorization to disburse funds to QueTel was rooted in Ohio. Furthermore, Cohen, Todd's alleged acts or omissions under which QueTel's claim arises occurred in Ohio. The alleged injury in this case took place in the District of Columbia, since that is where QueTel did not receive payment in December 1990. However, this factor, standing alone, does not warrant the application of District of Columbia law because the place of injury does not play as important a role as other factors for choice of law purposes when the

injury is economic loss as opposed to personal injury. *See Hercules,* 566 A.2d at 42.

In accordance with Ohio law, QueTel must demonstrate that it was in privity with CCI regarding the escrow agreement in order to maintain an actionable legal malpractice claim against Cohen, Todd. *See Simon,* 512 N.E.2d at 638. Privity is found where a plaintiff has a vested right in the transaction at issue. *Id.* A vested right is one that is "fixed, settled, absolute and not contingent upon anything." *Rehor v. Case Western Reserve University,* 43 Ohio St.2d 224, 331 N.E.2d 416, 420 (1975). In determining privity here, then, the Court must establish whether or not QueTel had a vested right in the November 1988 escrow agreement. The Court finds that QueTel did not have a vested right since any right or interest in receiving payments from CCI by way of disbursements from Cohen, Todd was "contingent upon" the deposit of funds in the escrow account by the State Department. Accordingly, QueTel was not in privity with Cohen, Todd's client, CCI, and therefore cannot maintain a legal malpractice claim against Cohen, Todd under Ohio law.

## C. PUNITIVE DAMAGES

The parties dispute whether QueTel is entitled to punitive damages in this case. *See* Pltf. Complaint at 8; Cohen, Todd's Memo at 11–13. Since the Court has found no cause of action, QueTel is not entitled to any damages against Defendant Cohen, Todd and there is no need to consider this dispute.

### III. Conclusion

The Court concludes that Cohen, Todd has shown there are no material facts in dispute and that Cohen, Todd is entitled to Summary Judgment as a matter of law, under both the breach of contract claim and the malpractice claim asserted by QueTel. Therefore, this case shall be dismissed against Cohen, Todd pursuant to Federal Rule of Civil Procedure 56.