OPINION OF THE COURT
 

 Levine, J.
 

 Plaintiffs are 21 for-profit residential health care facilities (RHCFs) located in various parts of the State. They have brought this suit challenging the constitutional validity of assessments of 1.2% and 3.8% on RHCF gross receipts under a statutory scheme whereby those taxes on receipts for the care of Medicaid patients are reimbursed as a recoverable expense of care.
 

 The State first assessed a tax on the gross receipts of RHCFs for the period January 1, 1991 to March 31, 1992, at the rate of .6% with no reimbursement (L 1990, ch 938, § 28). The statute creating the assessment specifically provided that the tax was not a recoverable Medicaid expense
 
 (see,
 
 Public Health Law § 2807-d [10] [a]). Thus, in the original RHCF gross receipts legislation, the burden of the tax was imposed uniformly on all of the gross receipts of all RHCFs, regardless of source.
 
 [1]
 
 The .6% original assessment is not at issue on this appeal.
 

 In 1992, the Legislature extended the original .6% assessment and imposed an “additional assessment” of 1.2% (L 1992, ch 41, § 5; Public Health Law § 2807-d [2] [b] [ii]). That enactment provided, however, that, contingent upon all Federal ap
 
 *288
 
 provals necessary for Federal financial participation in the State’s Medicaid program, the additional 1.2% assessment as applied to RHCF Medicaid receipts would be a reimbursable cost of care
 
 (id.,
 
 § 11; Public Health Law § 2807-d [10] [b]). In 1995, the Legislature enacted a “further additional assessment” of 3.8% on RHCF gross receipts, and again provided that, contingent upon Federal approvals, that tax paid on Medicaid receipts would be a reimbursable expense (L 1995, ch 2, § 136; Public Health Law § 2807-d [2] [b] [iii]).
 
 [2]
 

 Plaintiffs brought this action in 1995, seeking declaratory and injunctive relief, and a refund of gross receipt taxes paid.
 
 [3]
 
 On this appeal, they rely entirely on the claim that their Fourteenth Amendment rights to equal protection of the law have been violated by the statutory scheme in which the State imposes a 1.2% and 3.8% gross receipts tax upon all of the receipts of all RHCFs, but only reimburses RHCFs for taxes paid on receipts for the care of Medicaid patients. They assert that this statutory scheme unconstitutionally discriminates against RHCFs whose non-Medicaid patient population (i.e., private pay patients and patients whose nursing home fees are funded by insurers, health maintenance organizations or the Federal Veterans Administration) is larger than the Statewide average of 20%.
 

 On plaintiffs’ motion for summary judgment, they submitted evidence to demonstrate that (1) while private pay rates substantially exceed allowable Medicaid rates, an RHCF’s net profits do not correlate with having a higher percentage of private pay residents in its patient population; and (2) RHCFs catering largely to Medicaid patients are able to earn substantial profits under existing Medicaid reimbursement rates.
 

 Supreme Court granted plaintiffs’ motion. It concluded that, as a gross receipts tax, the statutory scheme imposed the burden of the assessments more heavily upon some RHCFs than others, without any policy justification other than the State’s interest in raising revenue, which it considered to be inadequate (citing
 
 Stewart Dry Goods Co. v Lewis,
 
 294 US
 
 *289
 
 550). The court further held that plaintiffs’ evidence dispelled all of the rationales suggested by the State for the differential treatment of RHCFs based on their relative mix of Medicaid and non-Medicaid patients.
 

 On the State’s appeal, the Appellate Division affirmed (253 AD2d 548). The Court determined that there was a disparity of taxation under the assessment and Medicaid reimbursement scheme, as RHCFs with larger Medicaid populations “have the majority of their revenues not subject to assessments * * * while RHCFs like the plaintiffs, having a large proportion of gross receipts from non-Medicaid sources, must shoulder the burden”
 
 (id.,
 
 at 549-550). That Court further held that a denial of equal protection occurred here because of that disparate treatment, which could not be justified by the State’s interest in raising revenue
 
 (id.,
 
 at 550). The Appellate Division also held that a gross receipts tax treating “differently the same transaction — the provision of skilled care to residents of RHCFs — without regard to profits
 
 (id.),”
 
 was invalid under
 
 Stewart Dry Goods Co. v Lewis (supra).
 

 On the State’s appeal as of right (CPLR 5601 [d]), we reverse and declare the statutory scheme constitutional.
 

 Discussion
 

 The parties do not dispute that these gross receipts taxes do not proceed along suspect lines or involve any fundamental rights of plaintiffs. Therefore, there are three well-established principles that set the framework for equal protection review on this appeal. First, any classification respecting differential taxation of nursing homes, in this case based on the composition of their patient populations, enjoys a strong presumption of constitutionality, which plaintiffs must overcome beyond a reasonable doubt
 
 (see, Maresca v Cuomo,
 
 64 NY2d 242, 250). Second, the assessments are subject to the lowest level of judicial review, whether any rational basis supports the legislative choices
 
 (see, id., see also, Heller v Doe,
 
 509 US 312, 319-320).
 

 Third, here rational basis review is being applied to a system of taxation. “This standard is especially deferential in the context of classifications made by complex tax laws”
 
 (Nordlinger v Hahn,
 
 505 US 1, 11). We noted in
 
 Trump v Chu
 
 (65 NY2d 20) that, in reviewing the validity of taxation classifications “the equal protection clause does not prevent State Legislatures from drawing lines that treat one class of individuals or entities differently from others unless the difference in treatment
 
 *290
 
 is ‘palpably arbitrary’ or amounts to an ‘invidious discrimination’”
 
 (id.,
 
 at 25, citing,
 
 inter alia, Lehnhausen v Lake Shore Auto Parts Co.,
 
 410 US 356, 360). The Equal Protection Clause “imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of State taxation. The State may impose
 
 different specific taxes upon different trades and professions and may vary the rate of excise upon various products” (Allied Stores v Bowers,
 
 358 US 522, 526-527 [emphasis supplied]).
 

 In our view, plaintiffs have failed to meet their heavy burden of demonstrating a violation of the Equal Protection Clause here. We assume without deciding that this taxing scheme— which at most has the net effect of exempting RHCF receipts for the care of Medicaid patients from a general gross receipts tax on all of these facilities — created a “discrete and objectively identifiable class” triggering equal protection analysis in the first instance
 
 (San Antonio Ind. School Dist. v Rodriguez,
 
 411 US 1, 22;
 
 id.,
 
 at 60 [Stewart, J., concurring]). Even if the classifications in these gross receipts assessment statutes created a discrete class of nursing homes taxed disparately on the basis of their low proportions of medically indigent patients, plaintiffs have failed to establish any equal protection violation under the rational basis level of judicial scrutiny applicable here, and the courts below erred by holding otherwise. That standard of review has been characterized by the United States Supreme Court as “a paradigm of judicial restraint”
 
 (Federal Communications Commn. v Beach Communications,
 
 508 US 307, 314).
 

 Under the rational basis standard, the Legislature, in creating a classification, “need not actually articulate at any time the purpose or rationale supporting its classification. Instead, a classification must be upheld against an equal protection challenge if there is any
 
 reasonably conceivable
 
 state of facts that could provide a rational basis for the classification”
 
 (Heller v Doe, supra,
 
 509 US, at 320 [internal citations and quotation marks omitted] [emphasis supplied]).
 

 Two principles flow from the proposition that any
 
 reasonably conceivable
 
 state of facts provides a sufficient rational basis to sustain a classification. First, “it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature”
 
 (Federal Communications Commn. v Beach Communications, supra,
 
 at 315). Thus, “[t]he legitimate purpose justifying the provision
 
 need not be the primary purpose
 
 of the provision * * *
 
 *291
 
 and, indeed, a court may even
 
 hypothesize
 
 the motivations of the State Legislature to discern any conceivable legitimate objective promoted by the provision under attack”
 
 (Maresca v Cuomo, supra,
 
 64 NY2d, at 251 [emphasis supplied]). Second, the State “has no obligation to produce evidence to sustain the rationality of a statutory classification. A legislative choice is
 
 not subject to courtroom factfinding
 
 and may be based on
 
 rational speculation
 
 unsupported by evidence or empirical data”
 
 (Heller v Doe, supra,
 
 at 320 [internal quotation marks omitted] [emphasis supplied]).
 

 The United States Supreme Court’s rejection of the equal protection challenge to California’s Proposition 13 in
 
 Nordlinger v Hahn (supra)
 
 is especially instructive here. Under Proposition 13, approved by the California voters in 1978, increases in residential and commercial real property tax assessments were limited to 2% a year, with exceptions only for new construction or a change in ownership (other than from parent to child). This essentially created an “acquisition-value system”
 
 (id.,
 
 at 6) of property assessment, in which only assessments on recently acquired properties reflected current market values. As the Court in
 
 Nordlinger
 
 noted, because of the dramatic inflation in California real estate values after 1978, this “ ‘welcome stranger’ ” system, resulted, by 1989, in “staggering” disparities in tax burdens in which, overall, “the 44% of California homeowners who have owned their homes [ever] since the enactment of Proposition 13 in 1978 shouldered only 25% of the more than $4 billion in residential property taxes paid by homeowners statewide”
 
 (id.).
 

 Indeed, the petitioner in
 
 Nordlinger,
 
 who bought a relatively modest home in 1988, paid “about five times more in taxes than some of her neighbors who owned comparable homes since 1975 within the same residential development * * * [and] only a few dollars short of that paid by a pre-1976 owner of a $2.1 million Malibu beachfront home”
 
 (id.,
 
 at 7). Moreover, as noted in Justice Stevens’ dissent, the disparities in tax burdens were further exacerbated under Proposition 13 by the exemption, available “repeatedly and indefinitely,” from change-in-ownership reassessment for transfers from parent to child
 
 (id.,
 
 at 29). Thus, “[t]wo families with equal needs and equal resources are treated differently solely because of their different heritage”
 
 (id.,
 
 at 30).
 

 Nonetheless, the Supreme Court upheld California’s Proposition 13 against the equal protection challenge. The Court first noted that the rational basis standard of review “is especially
 
 *292
 
 deferential” with respect to tax law classifications
 
 (id.,
 
 at 11). Without referring to any legislative history actually leading to the approval of Proposition 13 by California voters, the Court posited two conceivable rationales for sustaining it: (1) a State interest in fostering “local neighborhood preservation, continuity, and stability” which Proposition 13 arguably furthered in its tendency “to discourage rapid turnover in ownership of homes and businesses”
 
 (id.,
 
 at 12); and (2) differences in “reliance interest” between new homeowners and existing homeowners regarding precipitous real property tax increases
 
 (id.,
 
 at 12-13). The Court held that the exemption from reassessment for transfers from parent to child could be sustained as furthering “the interests of family and neighborhood continuity and stability”
 
 (id.,
 
 at 17).
 

 Nordlinger,
 
 in our view, is controlling here. First, plaintiffs as a class have not established disparities in tax burdens anywhere approaching the “staggering” inequalities demonstrated in
 
 Nordlinger.
 
 Second, here the Legislature had concrete facts upon which reasonably to conclude that an RHCF gross receipts tax should be structured to: (1) reduce the incentive for higher quality-of-care RHCFs to prefer admitting patients who could finance their care from their own resources rather than Medicaid patients; and (2) encourage those RHCFs to share in the burden of providing skilled nursing home care for the medically indigent. The record reveals that daily rates charged private patients in RHCFs may exceed Medicaid rates at the same facilities by as much as 65%. Moreover, the State restricts the expansion of available RHCF beds
 
 (see,
 
 Public Health Law § 2802 [2];
 
 Matter of Baird v Axelrod,
 
 102 AD2d 972,
 
 affd for reasons stated below
 
 65 NY2d 655). Therefore, in any given RHCF, a powerful economic incentive exists for preferring non-Medicaid patients for existing beds.
 

 The Legislature has expressly identified the provision of equality of medical care for the needy through the Medicaid system as a matter of public concern
 
 (see,
 
 Social Services Law § 363). Furthermore, a tax exemption for receipts from the care of Medicaid patients far more directly relates to and furthers the State’s interest in securing equality of nursing home care for the indigent, than does the acquisition-value assessment system of California’s Proposition 13 relate to a State interest in family and neighborhood stability, found sufficient in
 
 Nordlinger v Hahn (supra).
 
 Thus, in our view, the RHCF gross receipts tax scheme here readily passes rational basis review.
 

 Plaintiffs’ arguments to the contrary are unavailing. They urge that, in identifying a legitimate State interest affording a
 
 *293
 
 rational basis for the claimed disparities in taxation among RHCFs, the State should be limited to the objectives of revenue-raising, and Medicaid cost-shifting and cost-cutting, referred to in the legislative history. Nothing whatsoever in the legislative history, however, demonstrates that those objectives were exclusive. Moreover, plaintiffs’ position directly conflicts with settled equal protection jurisprudence that any
 
 reasonably conceivable
 
 legitimate State interest suffices
 
 (Heller v Doe, supra,
 
 at 320) and that the relevant State interests need
 
 not
 
 have been the
 
 primary
 
 legislative objective
 
 (Maresca v Cuomo, supra,
 
 at 251).
 
 [4]
 

 In any event, plaintiffs’ argument from legislative purposes only proves the obvious: that, indeed, the challenged statutory provisions, essentially providing an exemption for Medicaid receipts from the RHCF gross receipts taxes, did
 
 not
 
 further the Legislature’s cost containment or revenue raising objective. The appropriate conclusion from that unremarkable and undebatable fact is not that the exemption is unconstitutional, but merely that the Legislature had other purposes in mind in enacting the exemption, including, conceivably, the ones we have identified; that is, to mitigate the disincentive of higher quality-of-care RHCFs from admitting Medicaid patients and to encourage those nursing homes to share in the burden of caring for the medically needy.
 

 Plaintiffs also heavily rely on the evidence they submitted showing that efficiently and economically operated RHCFs catering to a Medicaid clientele can earn substantial profits at Medicaid reimbursement rates and may even be more profit
 
 *294
 
 able than some facilities predominantly caring for non-Medicaid patients. That evidence might have some relevancy had ability to pay been the rationale advanced by the State for any tax burden disparities among RHCFs here. It has little if any bearing, however, on the rationality of a classification created to provide individual RHCFs with an incentive, given their existing staff/patient ratios and other profit-determinative factors, to accept a greater share of the burden of care for the indigent. In any event, plaintiffs’ effort to induce this Court to utilize evidentiary facts to counteract arguable legislative assumptions violates the rule that a legislative choice is not subject to courtroom fact-finding
 
 (Heller v Doe, supra,
 
 at 320).
 

 Finally, the reliance of plaintiffs and the courts below on the 1935 case of
 
 Stewart Dry Goods Co. v Lewis (supra)
 
 to establish an equal protection violation is misplaced. In
 
 Stewart Dry Goods Co.,
 
 the Supreme Court, with Justices Brandéis, Stone and Cardozo in dissent, struck Kentucky’s graduated gross receipts tax on
 
 all
 
 retail sales as a violation of the Equal Protection Clause. In
 
 Stewart Dry Goods Co.,
 
 Kentucky taxed the gross receipts from the sale of the
 
 very same
 
 items at different rates, depending upon the volume of such sales by any particular merchant. As we pointed out in
 
 Trump v Chu (supra),
 
 in
 
 Stewart Dry Goods Co.
 
 “[t]he
 
 only conceivable justification
 
 for this different treatment was that a merchant’s net income and consequently his ability to pay the tax increased as his volume of sales increased”
 
 (id.,
 
 65 NY2d, at 26 [emphasis supplied]). The Supreme Court invalidated the graduated gross receipts tax in
 
 Stewart Dry Goods Co.
 
 because of the undeniable fact that sales volume is
 
 not
 
 a reliable indicator of a merchant’s profits, i.e., ability to pay
 
 (see, Trump v Chu, supra,
 
 at 26). Here, the tax on gross receipts is at a flat rate
 
 (see, New York R. T. Corp. v City of New York,
 
 303 US 573) and, as we have demonstrated above, for legitimate reasons entirely unrelated to ability to pay, the State has rationally chosen to treat receipts from the “sale” to the State of nursing home care for the medically indigent differently from receipts from the sale of such services paid for by private or commercial sources.
 

 Accordingly, the judgment of Supreme Court appealed from and the order of the Appellate Division brought up for review should be reversed, with costs, and judgment granted declaring Public Health Law § 2807-d (2) (b) (ii), (iii) and § 2807-d (10) (b) constitutional.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Ciparick,
 
 *295
 
 Wesley and Rosenblatt concur.
 

 Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.
 

 [1]
 

 . Certain nonprofit, private proprietary general hospitals and facilities dedicated solely for the care of police, firefighters and emergency services personnel were not charged the assessments (see, Public Health Law § 2807-d [1] [b]). Those exemptions are not at issue on tihis appeal.
 

 [2]
 

 . Congress, in section 4722 (c) of the Balanced Budget Act of 1997 (Pub L 105-33), approved both additional assessments as permissible health care related taxes. Thus, the contingencies for State reimbursement of both additional assessments on Medicaid receipts were met.
 

 [3]
 

 . The Legislature has since phased out the original .6% assessment on RHCF gross receipts and the additional assessment of 1.2% (L 1997, ch 389, §§ 196-197). The further additional assessment of 3.8% is scheduled to expire January 1, 2000 (L 1999, ch 407, pt CC, § 4).
 

 [4]
 

 . In urging that encouraging RHCFs to share the burden of Medicaid patients is not a relevant legitimate State interest here, plaintiffs also heavily rely on a 1995 Medicaid reform bill (L 1995, ch 81) which is entirely unrelated to the RHCF gross receipts tax under review. Section 64 of that law (as amended by L 1996, ch 474, § 204) provided for financial penalties (of Medicaid reimbursement) to facilities failing to increase their Federally funded Medicare utilization. Plaintiffs draw the conclusion that this provision is designed to reduce service of the State’s Medicaid population by RHCFs and thus is at cross-purposes with the State interest recognized here. Plaintiffs’ conclusion is unwarranted. Medicare funding for skilled nursing home care is generally temporary, for not more than the first 100 days following admission to the facility
 
 (see,
 
 42 USC § 1395d [a] {2] [A]). There is nothing to indicate that once Medicare funding runs out, formerly Medicare-eligible patients in RHCFs are less likely to require Medicaid funding thereafter than the general percentages of Medicaid patients in RHCFs Statewide. Thus, the State’s interest in promoting the admission of such patients to high quality nursing homes remains the same, and, no cross-purposes exist.