[795 NYS2d 133]

In the Matter of the Claim of JENNIFER NOVARA, on Behalf of VICTORIA JONES, an Infant, Appellant, v CANTOR FITZGER-ALD, LP, et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent. (And Another Related Claim.)

Third Department, May 5, 2005

APPEARANCES OF COUNSEL

*Grey & Grey L.L.P.,* Farmingdale (*Robert E. Grey* of counsel), for Jennifer Novara, appellant.

*Fischer Brothers,* New York City (*Martin Krutzel* of counsel), for Cantor Fitzgerald, L.P., and another, appellants.

*Eliot Spitzer, Attorney General,* Albany (*Dorothy E. Hill* of counsel), for respondent.

## OPINION OF THE COURT

CREW III, J.

On September 11, 2001, Paul Innella (hereinafter decedent) perished in the terrorist attacks on the World Trade Center. At the time of his death, decedent was survived by his then 22-month-old daughter from a prior relationship, in addition to his purported fianceé, Lucy Aita. Thereafter, claimant, the mother of decedent's daughter, applied for decedent's workers' compensation death benefit on the child's behalf. By decision filed July 18, 2002, the Workers' Compensation Board awarded decedent's death benefit to the child pursuant to Workers' Compensation Law § 16 at the rate of $400 per week, together with a retroactive lump-sum payment.

The Board served Aita with notice of its decision, prompting her to file an objection to the award alleging that she was decedent's domestic partner and, as such, was entitled to a portion of the death benefit award pursuant to then pending legislation. The Legislature subsequently passed Workers' Compensation Law § 4, which afforded the domestic partners of employees killed in the terrorist attacks the same death benefits available to surviving spouses.* On or about October 22, 2002, Aita filed a formal claim for death benefits.

Following a hearing, a Workers' Compensation Law Judge found that Aita was decedent's domestic partner and, hence, was entitled to a portion of decedent's death benefit pursuant to Workers' Compensation Law § 4. As a result of this decision, Aita, now deemed the equivalent of decedent's spouse, was awarded $220 per week and his child's award was reduced to $180 per week. Claimant, decedent's employer and the employer's workers' compensation carrier sought Board review of this

---

* This legislation was given retroactive effect to September 10, 2001 (*see* L 2002, ch 467, § 2).

decision, contending that the finding that Aita was decedent's domestic partner was not supported by substantial evidence in the record as a whole and, further, that Workers' Compensation Law § 4 suffered from various constitutional infirmities. By decision filed December 15, 2003, a Board panel affirmed the underlying decision finding that Aita was decedent's domestic partner but declined to reach the constitutional issues. This appeal by claimant, the employer and the carrier ensued.

Of the numerous constitutional issues raised on appeal, only claimant's equal protection claim warrants any extended discussion. The crux of her claim in this regard is that Workers' Compensation Law § 4 draws an "invidious distinction" between the children of non-September 11, 2001 decedents, who receive the decedent's entire death benefit, and children of September 11, 2001 decedents, who must share such death benefit with the decedent's domestic partner. Although we agree with claimant that Workers' Compensation Law § 4 indeed creates an inequity in the law, for the reasons that follow, we simply are unable to conclude that such disparate treatment violates the Equal Protection Clause of the US Constitution.

As a starting point, because the challenged classification—the manner in which a given claimant's parent met his or her demise—is not based upon a "suspect classification," such as race or national origin, or a "quasi-suspect classification," such as gender or illegitimacy (see Clark v Jeter, 486 US 456, 461 [1988]; Massachusetts Bd. of Retirement v Murgia, 427 US 307, 312-313 [1976]), the "rational basis" test applies, which means that our inquiry is limited to "whether the statutory classification is rationally related to a legitimate government objective" (Tilles Inv. Co. v Gulotta, 288 AD2d 303, 304 [2001], appeal dismissed 97 NY2d 725 [2002], lv denied 98 NY2d 605 [2002]; see Heller v Doe, 509 US 312, 320 [1993]; Miriam Osborn Mem. Home Assn. v Chassin, 100 NY2d 544, 547 [2003]; Mallinckrodt Med. v Assessor of Town of Argyle, 292 AD2d 721, 724 [2002]). In resolving this inquiry, we are instructed that the classification at issue " 'must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification' " (Port Jefferson Health Care Facility v Wing, 94 NY2d 284, 290 [1999], cert denied 530 US 1276 [2000], quoting Heller v Doe, supra at 320). Stated another way, the statute under review will survive judicial scrutiny "unless the disparate treatment is 'so unrelated to the achievement of any combination of legitimate

purposes that . . . [it is] irrational' " (*Affronti v Crosson*, 95 NY2d 713, 719 [2001], *cert denied* 534 US 826 [2001], quoting *Kimel v Florida Bd. of Regents*, 528 US 62, 84 [2000]). And, as the case law makes clear, the legislative body at issue is given every benefit of the doubt. " 'The legitimate purpose justifying the provision [under review] *need not be the primary purpose* of the provision . . . and, indeed, a court may even *hypothesize* the motivations of the State Legislature to discern any conceivable legitimate objective promoted by the provision under attack' " (*Port Jefferson Health Care Facility v Wing, supra* at 290-291, quoting *Maresca v Cuomo*, 64 NY2d 242, 251 [1984], *appeal dismissed* 474 US 802 [1985]).

As justification for the passage and application of Workers' Compensation Law § 4, the Board in its brief relies upon numerous factors, including the unprecedented and unparalleled nature and scale of the terrorist attacks and the citizenry's outpouring of emotion and desire to assist those directly affected by the events of September 11, 2001. Specifically, the Board argues that the subject legislation is entirely consistent with the fundamental purpose of the Workers' Compensation Law—namely, to provide financial assistance to the families of workers injured or killed on the job and to keep such dependents off the public dole. Extending such financial support to domestic partners, the Board argues, is both appropriate and logical as it ensures some form of financial support to as many September 11 dependents as reasonably may be identified. To the extent that this necessarily results in a reduction of workers' compensation benefits to dependent children, the Board asserts that the Legislature reasonably could have anticipated that the resulting financial impact would be cushioned by the various forms of private and public aid available to the families of the victims of September 11 and, further, that in many instances, similar benefits would not in fact be available to domestic partners. In short, the Board urges that the legislative response to this national tragedy was compassionate, financially sound and, ultimately, rational because Workers' Compensation Law § 4 expanded the categories of dependents to whom death benefits could be provided, thereby advancing the state's legitimate governmental interest in aiding its citizens in a time of crisis and preventing further inflation of the welfare rolls.

Because of the disparate treatment resulting from Workers' Compensation Law § 4, one certainly could debate the equities of the statute. Under the prevailing case law, however, which, as

noted previously, not only permits but encourages us " 'to discern any conceivable legitimate objective promoted by the provision under attack' " and to engage in " *'rational specula-tion'* " (*Port Jefferson Health Care Facility v Wing*, 94 NY2d 284, 291 [1999], *supra* [citations omitted]), there can be no debate as to the merit of claimant's constitutional challenge in this regard. Simply put, in light of the stated purpose and objec-tives of Workers' Compensation Law § 4, we cannot say that the statute fails to bear a rational relationship to any legitimate governmental interest. That said, we conclude that Workers' Compensation Law § 4 does not run afoul of the Equal Protec-tion Clause.

Claimant next contends that Workers' Compensation Law § 4 violates the "quid pro quo" provisions of NY Constitution, article I, § 18. In essence, claimant argues that but for article I, § 18 and the provisions of the Workers' Compensation Law, she would have been able to sue decedent's employer under the state's wrongful death statute (*see* EPTL 5-4.4). Reducing claimant's daughter's original award and giving a portion thereof to Aita, who would have no similar rights under the wrongful death statute, claimant asserts, violates the "trade off" underlying article I, § 18, as well as the due process and takings clauses under the NY and US constitutions.

As to the state constitutional challenge, the case law makes clear that NY Constitution, article I, § 18 grants the Legislature the power to "create an exclusive system of compensation for injuries sustained by employees, including the power 'to define who should be entitled to relief for damages without any state constitutional limitation whatever' " (*Matter of Smith v Atlas Assembly/Crawford Furniture Mfg. Corp.*, 216 AD2d 804, 805 [1995], *lv denied* 86 NY2d 711 [1995], quoting *Shanahan v Monarch Eng'g Co.*, 219 NY 469, 476 [1916]). Thus, the Legislature's decision to include domestic partners in the class of persons entitled to share in a decedent's workers' compensa-tion death benefit cannot and does not violate NY Constitution, article I, § 18.

Nor are we persuaded that there has been a violation of ei-ther the due process or takings clauses of the Federal Constitu-tion. "A statute will be held to have an impermissible retroac-tive effect when it 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or consideration[s] already past' " (*Olatunji v Ashcroft*, 387 F3d

383, 389 [4th Cir 2004], quoting *Society for Propagation of Gospel v Wheeler*, 22 F Cas 756, 767 [1814]). A right, in turn, is deemed to be vested when it is " 'fixed, settled, absolute and not contingent upon anything' " (*Quetel Corp. v Columbia Communications Intl., Inc.*, 787 F Supp 1, 5 [1992], quoting *Rehor v Case W. Reserve Univ.*, 43 Ohio St 2d 224, 229, 331 NE2d 416, 420 [1975]).

Inasmuch as the Board possesses continuing jurisdiction over all claims and is empowered to "make such modification or change with respect to former findings, awards, decisions or orders relating thereto, as in its opinion may be just" (Workers' Compensation Law § 123), claimant simply cannot be said to have had a vested property right to continue receiving benefits at the rate set forth in the original award. In this regard, we note the reduction in benefits occasioned here was prospective only. Thus, nothing that claimant's daughter already possessed was taken from her. Moreover, even if claimant were correct that her daughter had a vested property interest in the continued receipt of decedent's death benefits in a specified amount, due process requires nothing more than claimant be given notice and an opportunity to be heard, which was provided here. Hence, we are unable to discern a due process violation.

We reach a similar conclusion with regard to claimant's takings clause argument. "[A] property interest must exist before it can be 'taken' " (*Matter of Gazza v New York State Dept. of Envtl. Conservation*, 89 NY2d 603, 613 [1997], *cert denied* 522 US 813 [1997]). Where, as here, there is nothing more than an expectancy interest, there is an insufficient basis upon which to find a takings clause violation (*see generally Preble Aggregate v Town of Preble*, 263 AD2d 849, 852 [1999], *lv denied* 94 NY2d 760 [2000]). Claimant's remaining contentions, including her assertion that Workers' Compensation Law § 4 constitutes an invalid delegation of legislative power, have been examined and found to be lacking in merit.

Cardona, P.J., Mugglin, Rose and Kane, JJ., concur.

Ordered that the decision is affirmed, without costs.