■ CONCOURSE REHABILITATION & NURSING CENTER, INC., Appellant-Respondent, v ANTONIA C. NOVELLO, M.D., Individually and as Commissioner of the New York State Department of Health, et al., Respondents-Appellants. [915 NYS2d 252]—

Order, Supreme Court, Bronx County (George D. Salerno, J.), entered July 20, 2009, which denied defendants' motion for summary judgment dismissing the complaint and granted plaintiff's cross motion for summary judgment declaring that the penalties imposed against it are unconstitutional only to the extent of declaring that plaintiff is entitled to have 50% of the subject interest and penalties waived, unanimously modified, on the law, defendants' motion granted and the declaration sought by the cross motion vacated, and otherwise affirmed, without costs. The Clerk is directed to enter judgment dismissing the complaint.

Public Health Law § 2807-d requires hospitals and residential health care facilities such as plaintiff to pay to defendant Department of Health (DOH) assessments (taxes) on their gross receipts from all patient care services and other operating income. Assessments on Medicaid receipts (but not non-Medicaid receipts) are reimbursable as a cost of care (*see Port Jefferson Health Care Facility v Wing*, 94 NY2d 284, 287-288 [1999], *cert denied* 530 US 1276 [2000]). If a facility fails to pay

the full amount of the assessments, DOH "may collect the deficiency" by withholding funds, such as the Medicaid reimbursement, that are due to the facility from the State (Public Health Law § 2807-d [6] [a]). In addition, the "deficiency" is subject to interest and penalties (*id.* § 2807-d [8]).

In December 1999, the Court of Appeals rejected a challenge to the statute on constitutional grounds (*see Port Jefferson Health Care Facility v Wing*, 94 NY2d 284 [1999], *supra*). During the pendency of that litigation, many facilities, including plaintiff, did not pay the assessments due under the statute, and, in February 2000, DOH began recouping these unpaid assessments, with statutory interest and penalties. Later that year, however, the Legislature enacted an amnesty provision to relieve the facilities from the statutory interest and penalties. It provided for a 100% waiver of interest and penalties if all outstanding assessments were paid by March 31, 2001 (*see* L 2000, ch 57, part A, § 2). In 2004, a second amnesty provision was enacted, which reduced by 50% the interest and penalties attributable to unpaid assessments due for any period before January 1, 2003, except for interest and penalties DOH had collected before the April 1, 2004 effective date (*see* L 2004, ch 58, part C, §§ 29, 36). A third amnesty provision, enacted in 2005, continued the 50% amnesty for interest and penalties due on unpaid assessments before January 1, 2003, after the second amnesty provision expired (*see* L 2005, ch 58, part C, § 24).

Plaintiff brought this action to challenge defendants' method of applying the funds they recouped for unpaid gross receipts toward assessment delinquencies. It contends that defendants wrongfully applied recouped funds to each delinquent month's principal, interest and penalties in chronological order, while they should have treated withheld funds owed to plaintiff as credits towards the assessments.

As a preliminary matter, the appropriate vehicle for plaintiff's challenge to defendants' determination is a CPLR article 78 proceeding (*see Solnick v Whalen*, 49 NY2d 224, 230-231 [1980]; *see also New York City Health & Hosps. Corp. v McBarnette*, 84 NY2d 194 [1994]). Thus, we review the determination according to the standard of review for an article 78 proceeding, i.e., whether the determination was rational, arbitrary and capricious, or an abuse of discretion (CPLR 7803; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222 [1974]).

As the motion court implicitly found, plaintiff was not entitled to the benefit of the first amnesty because it did not pay the

outstanding assessments by the March 31, 2001 deadline. However, contrary to the court's finding, the record did not show that plaintiff was owed substantially more than the outstanding assessments by DOH as of March 31, 2001. Indeed, plaintiff essentially concedes that the various rate increases, reimbursements and other sums eventually paid to it were not owed before March 31, 2001. Rather, these rate increases and reimbursements resulted from payment rates that for various reasons were revised retroactively. Thus, plaintiff's claim that it was owed monies as of March 31, 2001 refers to retroactive rate increases that it anticipated but that had not yet been calculated by DOH or approved for payment. The fact that DOH eventually paid the various sums does not support plaintiff's argument that those sums were owed as of March 31, 2001. The only exception to the foregoing is the $767,319 that DOH admitted was owed to plaintiff as of March 31, 2001. However, that amount was insufficient to pay the more than $2 million in unpaid assessments that plaintiff owed for the period April 1997 through December 1999, which is the period at issue here.

As to the second and third amnesty provisions, it is undisputed that DOH reduced by 50% the funds it attributed to interest and penalties that it had not recouped as of the April 1, 2004 effective date of the second amnesty provision. Thus, plaintiff was afforded the benefit of the second and third amnesty provisions. Its argument is that DOH should have applied the recouped funds first to principal. However, we find that DOH's determination to apply the funds to the earliest month's principal, interest, and penalties before proceeding to the next month was entirely rational. While "[a]s a general rule, the debtor has the right to specify to which debt he wishes a payment to be applied" (*Beyer Bros. of Long Is. Corp. v Kowalevich*, 89 AD2d 1005, 1005 [1982]), contrary to plaintiff's contention and the motion court's finding, there is no evidence that plaintiff so specified before DOH had allocated the funds. Thus, DOH was entitled to make the designation (*id.*). Further, "usually, the funds will be applied to the debts in the order of time in which they stand in the account" (*id.* at 1006).

Plaintiff's claimed entitlement to amnesty for penalties and interest attributable to assessments that were due between January 2000 and June 2004 is not properly before us, since it was not alleged in the complaint and there is no evidence in the record as to whether plaintiff failed to pay assessments due in that period or whether DOH imposed any interest and penalties for such assessments.

There is no merit to plaintiff's contention that the penalties

imposed against it are unconstitutional because the statute constitutes an unconstitutional bill of attainder. There is no evidence that the statute was enacted for the specific purpose of punishing plaintiff or any specific facilities (*see Lanza v Wagner*, 11 NY2d 317, 324 [1962], *cert denied* 371 US 901 [1962]).

Nor is there any merit to plaintiff's argument that the three-year statute of limitations applicable to actions pursuant to a statute (*see* CPLR 214 [2]) applies here. The CPLR does not govern proceedings before administrative agencies (*Matter of Hicks v New York State Div. of Hous. & Community Renewal*, 75 AD3d 127 [2010]). Further, it was reasonable for DOH to wait for the Court of Appeals' decision in *Port Jefferson* to begin to recoup funds that facilities had withheld during that litigation, and it was reasonable for DOH to stop recoupment when the Legislature enacted the first amnesty giving the facilities until March 31, 2001 to pay their delinquent assessments.

Summary judgment dismissing plaintiff's remaining claims, which were not addressed by the motion court, is also warranted. As to the first claim for relief, the statute entitles a facility to a hearing on assessments only where the assessments are based on estimates, not the case here (*see* Public Health Law § 2807-d [6] [e]). Plaintiff's interpretation of Public Health Law § 2807-d (8) (a) and (b), which underpins its fourth claim for relief, would lead to an absurd result (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 145). As to its fifth claim, plaintiff concedes that DOH has the discretion to use the 12% rate provided by the statute (Public Health Law § 2807-d [8] [a]). The sixth claim is without merit since plaintiff is not a facility excluded from the provisions of the statute (*see* Public Health Law § 2807-d [1] [b]). As to plaintiff's seventh claim, DOH reasonably did not consider its assessment payments "actual" until it had completed its recoupment of plaintiff's unpaid assessments, interest, and penalties, at which time DOH in fact reconciled the assessments paid and revised plaintiff's Medicaid rates. As to the eighth claim, plaintiff acknowledges the removal of the cap for the applicable time period, to wit, 1997 to 1999. Plaintiff's tenth claim is based on the fact that certain facilities that were delinquent or late were not charged with interest or penalties. However, as DOH explained, those facilities made payments on or before the first amnesty end date, i.e., March 31, 2001, and thus were not "similarly-situated" to plaintiff (*see generally Matter of Walton v New York State Dept. of Correctional Servs.*, 13 NY3d 475, 492 [2009]). Finally, as to plaintiff's twelfth claim, Public Health Law § 2807-d does not condition the imposition of assessments on the existence of a

Medicaid contract between the facility to be assessed and a local social services district. Concur—Tom, J.P., Mazzarelli, Friedman, Renwick and DeGrasse, JJ.