[765 NYS2d 599]

BARKLEE REALTY COMPANY LLC et al., Respondents, v GEORGE E. PATAKI, as Governor of the State of New York, Appellant.

First Department, October 16, 2003

APPEARANCES OF COUNSEL

*Barbara Kraebel* for respondents.

*Melanie L. Oxhorn* of counsel (*Caitlin Halligan* and *Michael S. Belohlavek* on the brief; *Eliot Spitzer, Attorney General* of New York State, attorney), for appellant.

*Briscoe R. Smith* of counsel (*Martin S. Kaufman* on the brief; *Atlantic Legal Foundation,* attorneys), amici curiae.

## OPINION OF THE COURT

ANDRIAS, J.P.

It is fundamental that a legislative enactment, such as Limited Liability Company Law § 206, "carr[ies] an exceedingly strong presumption of constitutionality." (*Elmwood-Utica Houses v Buffalo Sewer Auth.*, 65 NY2d 489, 495 [1985]). Although such presumption is rebuttable, any challenge to a statute's constitutionality carries the "heavy burden of demonstrating unconstitutionality beyond a reasonable doubt" (*id.*).

In 1994, New York State enacted the Limited Liability Company Law (L 1994, ch 576, § 1). A limited liability company is an "unincorporated organization of one or more persons having limited liability for the contractual obligations and other liabilities of the business" (Limited Liability Company Law § 102 [m]). Section 202 of the Limited Liability Company Law, enumerating the powers conferred on all limited liability companies, includes the right to sue and to access New York courts (Limited Liability Company Law § 202 [a]).

Section 206 of the Limited Liability Company Law requires each limited liability company to publish its articles of organization or comparable specified information for six successive weeks in two local newspapers designated by the clerk of the county where the limited liability company has its principal office, followed by filing an affidavit with the Department of State, stating that such publication has been made. If the publication requirement of section 206 is not completed within 120 days of the company's formation, the limited liability company will be precluded from "maintaining any action or special proceeding" in any New York court "unless and until" it complies with that requirement. Section 206 further specifies that the company's failure to file the required proof of publication shall not impair the validity of any of its contracts or impair the right of any other party to maintain any action or proceeding against the company or prevent the company from defending any such action or proceeding.

Plaintiffs Barklee 94 LLC and Barklee Realty Company LLC were formed in May 1999 and June 1999, respectively. Barklee 94 owns a 10-unit rent-regulated apartment house in Manhattan. Barklee Realty manages the buildings owned by Barklee 94 and Barklee 147, another LLC formed by plaintiffs' principal in 1997 which fully complied with the filing and publication requirements of section 206, at a cost of $1,645. "Because of the costs," plaintiffs, at the time of their formation, did not comply with the publication and filing requirements of section 206. Instead, they commenced this action seeking a declaration that Limited Liability Company Law § 206 is unconstitutional and enjoining enforcement of its publication and filing requirements.

Plaintiffs' amended complaint alleges violation of plaintiffs' right to due process of law under the Fifth and Fourteenth Amendments of the United States Constitution and article I, § 6 of the New York State Constitution; violation of plaintiffs' right to equal protection of the laws under the Fourteenth Amendment of the United States Constitution and article I, § 11 of the New York State Constitution; and, violation of plaintiffs' right to unencumbered access to New York courts under article X, § 4 of the New York State Constitution.

Pointing to the "short statutes of limitation and summary nature of much of such litigation" which a building owner must resort to, plaintiffs alleged, "To the extent that LLC Law section 206 denies Plaintiffs access to New York courts unless they comply with publication requirements, Section 206 violates Plaintiffs' rights to due process of law under the New York State and United States Constitutions." The basis for plaintiffs' equal protection claim was not specifically set forth in the complaint, but in moving for summary judgment, plaintiffs alleged Limited Liability Company Law § 206 is discriminatory because "there are numerous business entities formed under New York law which are not burdened by publication obligations or sanctions comparable to those in Limited Liability Company Law section 206." Defendant filed an answer to the amended complaint on May 30, 2000 and the parties subsequently cross-moved for summary judgment.

In granting summary judgment to plaintiffs and declaring section 206 unconstitutional, the IAS court made the following findings: section 206 violates due process because it places a restriction on a limited liability company's access to the State's courts that is not reasonably related to the State's claimed purpose of informing citizens about the formation of limited li-

ability companies with which they may have dealings; that, even if the required publication can be done after a lawsuit has been commenced, prejudice is still manifest since litigation commenced before publication will be delayed at least six weeks; and section 206 violates a limited liability company's right to equal protection by conditioning its access to the courts on a publication requirement that is not imposed on New York corporations.

Plaintiffs contend that section 206 violates their right to "unencumbered access to State courts under Article 10 sec. 4 of the New York State Constitution." However, article X, § 4 does not grant limited liability companies any general right of access to civil courts, but at most guarantees them the same right accorded to a natural person in a similar case, who likewise has no such general constitutional right.

The Court of Appeals has held that, at least where no fundamental interest is at stake, substantive due process concerns are satisfied as long as legislation does not "arbitrarily" "alter or restrict" a right of access to the State's civil courts possessed under state law (see *Matter of Colton v Riccobono*, 67 NY2d 571, 576 [1986]).

While the Legislature gave limited liability companies the power to "sue or be sued, or institute, participate in or defend any action or proceeding * * * in its name," it also provided that the power was "subject to any limitations provided in this chapter or any other law of this state" (Limited Liability Company Law § 202 [a]). Thus, limited liability companies have never enjoyed an unrestricted right of access under state law. Article X, § 4 of the State Constitution does not confer any independent right of access to the State's civil courts, but merely permits limited liability companies and those other entities to which that constitutional provision applies to exercise the same rights, and to be subject to the same limitations as natural persons.

As to plaintiffs' equal protection claim, the IAS court stated that the parties agree that plaintiffs do not fall into a suspect class and found it "clear under these circumstances [that] a statute enjoys a strong presumption of constitutionality which plaintiffs must overcome beyond a reasonable doubt." Because of that, constitutional assessments on these grounds are subject to the lowest level of judicial review, i.e., whether any rational basis supports the challenged legislation. In fact, as the IAS court recognized, the rational basis does not have to be apparent or even stated by the Legislature (*Port Jefferson Health*

*Care Facility v Wing*, 94 NY2d 284 [1999], *cert denied* 530 US 1276 [2000]).

More specifically, "[u]nder the rational basis standard, the Legislature, in creating a classification, 'need not actually articulate at any time the purpose or rationale supporting its classification,'" but "'[i]nstead, a classification must be upheld against an equal protection challenge if there is any *reasonably conceivable* state of facts that could provide a rational basis for the classification'" (*Port Jefferson Health Care Facility v Wing, supra*, 94 NY2d at 290 [emphasis in original], quoting *Heller v Doe*, 509 US 312, 320 [1993]). Thus, in a case where the legislative history fails to disclose the actual reason or reasons for enacting certain legislation, "a court may even hypothesize the motivations of the State Legislature to discern any conceivable legitimate objective promoted by the provision under attack" (*Maresca v Cuomo*, 64 NY2d 242, 251 [1984], *appeal dismissed* 474 US 802 [1985]; *Port Jefferson Health Care Facility, supra*, 94 NY2d at 290-291). Finally, the State "has no obligation to produce evidence to sustain the rationality of a statutory classification. '[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data'" (*Heller v Doe, supra*, 509 US at 320; *Port Jefferson Health Care Facility, supra*, 94 NY2d at 290-291).

The IAS court found that the publication requirement as a precondition for access to the courts failed the "rational basis" test because "it rests on grounds wholly irrelevant to the achievement of the State's objective" (citing *Heller v Doe, supra*, 509 US at 324) because "[t]he notice given for six consecutive weeks after a Limited Liability Company's formation does not in any way enhance the adjudication of justice, but might even have the 'opposite effect' where a Limited Liability Company is unable to commence actions because a short Statute of Limitations has expired."

The fundamental flaw in the court's reasoning is its conclusion that "[t]he publication mandate, required as a precondition to access to the courts has nothing to do with any aspect of a court proceeding." As pointed out by the Attorney General, such conclusion is based on the erroneous assumption that the objective of the publication requirements as a condition to a limited liability company's access to the courts must necessarily have been to enhance the adjudication of justice. It is irrelevant, however, whether or not section 206 enhances the adjudication of justice, since the only relevant inquiry in apply-

ing the "rational basis" test is whether the requirements of section 206 are rationally related to the promotion of *any* legitimate state interest.

The IAS court faulted section 206's condition on maintaining an action for failing to provide "financial support to the courts," "a measure of security to an adversary," or "notice as to a pending lawsuit." However, a condition or limitation on access to state courts need not in fact be related to the court system or litigation process, as long as it is otherwise reasonably designed to promote the interests of the community (*see e.g. Matter of Colton v Riccobono, supra*, 67 NY2d at 577 [holding that a condition on access to courts did not violate substantive due process where it was rationally related to goal of "helping preserve quality health care in this State"]). Barring the maintenance of court proceedings by limited liability companies that have not complied with the publication requirement is rationally related to the goal of ensuring that those companies actually publish the designated information.

The IAS court recognized the strong presumption of constitutionality, but nevertheless found the rationale proffered by defendant, viz., "informing members of the public of specific important information regarding the newly organized company," unpersuasive since such information is readily available through the Secretary of State to any and all people who want or need it and that those people presumably would want such information, not at the time of the company's formation, but when they were threatened with litigation by a limited liability company. Noting that the purpose of the Limited Liability Company Law was to encourage business and commerce by allowing for formation of a new type of business entity—one that combined a corporation's limitations on personal liability with the operating flexibility of a partnership—and that both the City Bar and the then Attorney General opposed the publication requirements as being burdensome without serving a discernable purpose, the court found that there is no rational basis for section 206's mandates and that plaintiffs had carried their burden of showing unfair discrimination which violates their right to equal protection of the law.

Such conclusion, however, overlooks the fact that section 206, rather than being extraordinary in any way, is typical of similar laws in New York and elsewhere that condition access to state courts on compliance with various administrative requirements. For example, Business Corporation Law § 1312 provides that a foreign corporation doing business in this state

without authority shall not maintain any action in this state until it has been authorized to do business in this state and has paid all fees, penalties and franchise taxes for the years it did business in this state without authority. General Business Law § 130 (9) contains a similar provision enforcing filing requirements for persons operating under an assumed business name by prohibiting maintenance of any action until the required certificate has been executed and filed in accordance with its provisions.

Public notice requirements for unincorporated business entities have a long history and are a tried and true method of disseminating information regarding their organizational structure and other pertinent factors. As long ago as 1844, in order to form a limited partnership, the act authorizing such entities required that

> " '[T]he partners shall publish the terms of the partnership, when registered, for at least six weeks immediately after such registry, in two newspapers * * * [I]f such publication be not made, the partnership shall be deemed general' * * *
>
> "The object of the notice is publicity; that all who deal with the partnership may know the names of the persons composing it, and, so far as respects the special partners, the extent of its capital actually paid in" (*Smith v Argall*, 6 Hill 479, 481 [1844]; *see also White v Eiseman*, 134 NY 101, 103 [1892] [noting that while the primary object of the act authorizing limited partnerships was to encourage those having capital to become partners with those having skill, "(t)he next and incidental object was to furnish reasonable protection to those dealing with the concern by requiring certain acts to be done and public notice thereof given, so that all who desired might know the essential features of the arrangement"]).

Section 206's second provision, which conditions the maintenance of an action or special proceeding on compliance with the publication requirement, provides an incentive to ensure that the required disclosure will be made. The Court of Appeals has upheld the use of limitations on legal proceedings as a means of obtaining compliance with a statute's principal goal (*see e.g. Curiale v Ardra Ins. Co.*, 88 NY2d 268, 277-279 [1996] [upholding constitutionality of provision of Insurance Law

requiring striking of answer and entry of default judgment against unauthorized foreign or alien insurance company if it did not post pre-answer security]).

Moreover, the statute itself applies equally to all domestic limited liability companies, and the same requirements are imposed on other forms of unincorporated limited liability business entities (*see* Limited Liability Company Law § 802 [b] [foreign limited liability companies]; § 1203 [c] [1], [2] [professional service limited liability companies]; § 1306 [d] [foreign professional service limited liability companies]; Partnership Law § 121-201 [c] [limited partnerships]; § 121-902 [d] [foreign limited partnerships]; § 121-1500 [a] [registered limited liability partnerships]; § 121-1502 [f] [registered foreign limited liability partnerships]).

The IAS court also found it to be "an obvious stretch to assume that any potential defendant to an action commenced by a limited liability company would be perusing the classifieds on a regular basis so as to note the organizing information provided by a newly formed LLC." At another point in its decision, the court opined: "Presumably those people would want the information at the time they were threatened with litigation by an LLC. Also no other business entity carries such a precondition, an expensive one, for going into court."

Such rationale overlooks the fact that it is much more likely that potential plaintiffs, rather than potential defendants, would be very interested in knowing the names of the people behind the limited liability company they are, or are about to be, doing business with. Clearly the goal of section 206 is not related to the court system or the adjudication of justice, but is solely intended to encourage compliance with administrative requirements unrelated to the court system that might otherwise be ignored. As previously noted, failure to comply with the publication requirement would not impair the validity of any contract or act of the limited liability company; would not prevent a limited liability company from defending itself in court; and should not affect the limited liability of its members, although, from a practical standpoint, a limited liability company might be hampered in some of its dealings, particularly where an opinion of counsel that the limited liability company had been validly formed is required (Bruce A. Rich, Practice Commentaries, McKinney's Cons Laws of NY, Book 32A, 2003 Pamph, Limited Liability Company Law [3] [D], at 8 ["Formation (Article II)"]). Thus, section 206 has no direct bearing on the court system or the adjudication of justice, but

is simply one of several steps a limited liability company must take in order to enjoy the full scope of its privilege to do business.

Although the motion court found that the required manner of publication of a limited liability company's articles is costly, unnecessary and an ineffective method of getting the desired information to members of the public, it was for the Legislature alone to assess the wisdom and utility of publication as a means of disseminating such information. In evaluating whether a given law bears a rational connection to promotion of a legitimate state interest, courts are not to consider the wisdom or efficacy of that law or whether it is superior to other alternatives. Rather, it is for the Legislature alone to determine the advantages and drawbacks of the legislation in achieving a legitimate purpose (*see Montgomery v Daniels*, 38 NY2d 41, 53 [1975] [when applying rational basis test to legislation, "(t)he judiciary * * * is not called on to weigh the relative worth of data or arguments which may be marshaled on either side as to the wisdom of determinations made by the Legislature in the realm of policy," because " '(w)hether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature' " (citation omitted)]).

Finally, while plaintiffs complain about the cost of complying with the statutory publication requirement, they present no evidence that this cost is designed to be prohibitive or invidiously discriminatory in nature, or that it exceeds those amounts that limited partnerships have been required to pay over the years. Again, whether those requirements are "necessary" as one of a number of means of disseminating particular information concerning newly formed limited liability companies to members of the public—including those who cannot or would not otherwise attempt to gain access to the Department of State's Web site or pay a fee for the information—is a question to be addressed by the Legislature, not the courts. Because plaintiffs have not met their heavy burden of demonstrating unconstitutionality beyond a reasonable doubt, we reverse and declare Limited Liability Company Law § 206 constitutional.

Accordingly, the judgment (denominated an order) of the Supreme Court, New York County, entered November 28, 2001, which, upon the parties' respective motions for summary judg-

ment, declared that Limited Liability Company Law § 206 violates plaintiffs' constitutional rights to due process pursuant to the Fifth and Fourteenth Amendments of the United States Constitution and article I, § 6 of the New York State Constitution; equal protection under the Fourteenth Amendment of the US Constitution and article I, § 11 of the State Constitution; and access to the courts pursuant to article X, § 4 of the State Constitution; and enjoined its enforcement, should be reversed, on the law, without costs, plaintiffs' motion should be denied and the injunction vacated, and the Governor's motion should be granted and it should be declared that Limited Liability Company Law § 206 is constitutional.

Motion seeking leave to file amici curiae brief granted.

SAXE, ROSENBERGER, WILLIAMS and GONZALEZ, JJ., concur.

Judgment (denominated an order), Supreme Court, New York County, entered November 28, 2001, reversed, on the law, without costs, plaintiffs' motion denied, the injunction vacated and defendant's motion granted, and it is declared that Limited Liability Company Law § 206 is constitutional. Motion seeking leave to file amici curiae brief granted.

[Next page is 501.]