OPINION OF THE COURT
Edward H. Lehner, J.
Before me is a motion by respondent State Division of Housing and Community Renewal (DHCR) for reargument of petitioner’s prior motion which resulted in a decision and judgment dated January 31, 2006 (11 Misc 3d 628) finding that Rent Stabilization Code (9 NYCRR) § 2525.6 (b) was invalid in that it deprived a tenant accused of a rent overcharge of the right to prove a lack of willfulness.
Administratively, DHCR determined that petitioner, the prime tenant of an apartment at 204 East 7th Street, had overcharged respondent subtenant Somrak the sum of $9,877, and imposed treble damages pursuant to section 2525.6 (b) of the Code. That section provides in part that “[w]here a tenant violates the provisions of this subdivision, the subtenant shall be entitled to treble damages.” In rendering such determination, DHCR ruled that since that section of the Code “provides for a mandatory imposition of treble damages where a prime tenant collects overcharges from a subtenant . . . , the issue of whether the overcharge was willful cannot be considered.” This was in contrast to section 2526.1 of the Code which provides that where the claim of overcharge is made against the owner of the property, the owner’s liability would be limited to the amount of the overcharge (and not treble damages) if “the owner establishes . . . that the overcharge was not willful” (9 NYCRR 2526.1 [a] [1]). This latter Code section was authorized pursuant to section 26-516 of the Rent Stabilization Law (RSL) (Administrative Code of City of NY § 26-516).
Having been previously advised by both counsel that no authority had been located supporting the validity of the different treatment provided in the Code between overcharges by an owner as compared to those by a sublessor, and I finding none, I concluded that there was nothing in the RSL authorizing this disparate treatment. That conclusion was in error.
While RSL § 26-516 contains a provision enabling an owner to establish a lack of willfulness to avoid the imposition of treble damages, it has on this motion been called to my attention that a different section, RSL § 26-511 (c) (12) (e), provides that in the event of a rent overcharge by a tenant “the subtenant shall be entitled to damages of three times the overcharge,” with *716 there being no similar provision for the tenant to be entitled to show that the overcharge was not in fact willful. This difference in the RSL and the Code was discussed in Kolbert v Clayton (127 Misc 2d 1036, 1038 [Civ Ct, NY County 1985]), where Judge Saxe observed that the fact that “no similar defense or provision is contained in the sections applicable to subletting overcharges underscores the fact that the Legislature did not intend such a defense to be available to overcharging in the subletting context,” explaining:
“On reflection, the reasoning of the Legislature is evident — the procedure in arriving at the legally chargeable amount of rent by a landlord is extremely complicated, and mistakes in calculation are not necessarily always the fault of the landlord. The tenant on the other hand, need not follow any complicated procedure or apply any intricate formulas to discover the amount of rent he may lawfully charge to a subtenant — he need only look to his lease and, if applicable, add a 10% charge. It is for this reason, I am certain, that the Legislature did not believe it necessary to equip the sublessor who overcharges with the same defense that is available to the landlord-owner.” (See also, Gulivindala v Central Hudson, NYLJ, Mar. 6, 2002, at 24, col 3 [Sup Ct, NY County]; Lee v Weingarten, 1989 WL 47287, *8 n 6, 1989 US Dist LEXIS 2783, *19 n 6 [SD NY 1989].)
Arguably, the above reasoning for the said disparate treatment may not be applicable to the facts in the case at bar in that, as noted in the prior decision, there was some confusion on the part of petitioner as to whether a cooperative conversion plan for the subject building had been filed with the Attorney General so as to exempt the apartment from coverage under the RSL. However, in fact, no such plan had been accepted for filing. Hence, since the RSL and the Code adopted pursuant thereto clearly provide for different rights between the two classes of lessors, DHCR was correct in applying the treble damages provision of section 2525.6 (b) of the Code without considering the issue of willfulness.
The only argument raised by petitioner in his memorandum of law submitted on this reargument motion to sustain the prior decision is that the aforesaid difference in treatment of owners and sublessors violates the Equal Protection Clause of the United States Constitution, and he seeks to have the court apply a “strict scrutiny” test.
*717 The basic principles underlying equal protection jurisprudence were set forth in FCC v Beach Communications, Inc. (508 US 307, 313, 315 [1993]):
“Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. . . .
“Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature. . . . In other words, a legislative choice is not subject "to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.”
For the foregoing reasons,
“a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity . . . [and] cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose . . . [and a] State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification.” (Heller v Doe, 509 US 312, 319-320 [1993].)
“In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect [or] ‘results in some inequality’ ” (Dandridge v Williams, 397 US 471, 485 [1970]; see also, Port Jefferson Health Care Facility v Wing, 94 NY2d 284 [1999]; Maresca v Cuomo, 64 NY2d 242 [1984]; Barklee Realty Co. v Pataki, 309 AD2d 310 [1st Dept 2003]). In People ex rel. Office of Rent Admin., Div. of Hous. & Community Renewal v Berry Estates (87 AD2d 161 [2d Dept 1982], affd 58 NY2d 701 [1982]), it was specifically ruled that “ [legislative exercises of the police power, such as the regulation of rents, which do not *718 affect a fundamental right or interest . . . are afforded a low level of judicial scrutiny when challenged on equal protection grounds” (at 175).
Here, clearly, there is no basis for the “strict scrutiny” requested with respect to the subject laws which affect only the economic interests of lessors charging rents in excess of that authorized by statute. Applying the principles cited above, I find no basis to invalidate the subject statute on equal protection grounds as there is a reasonably conceivable state of facts that provides a rational basis for the disparate classification involved herein. (See, Kolbert v Clayton, supra.)
Accordingly, the motion of DHCR for reargument is granted, the prior decision is recalled, and the petition is dismissed.