**DUAL GROUPE, LLC, Plaintiff,**

v.

**GANS–MEX LLC et al., Defendants.**

**No. 12 CV 1031.**

United States District Court,
S.D. New York.

March 25, 2013.

Richard Paul Savitt, Savitt Law Firm PLLC, Bryan Ha, Attorney at Law, New York, NY, for Plaintiff.

Alexander Karasik, Karasik Law Firm PLLC, Brooklyn, NY, for Defendants.

## OPINION

THOMAS P. GRIESA, District Judge.

Plaintiff Dual Groupe, LLC ("Dual Groupe") brings this suit alleging that defendants continue to make unauthorized use of Dual Groupe's trademark in connection with defendants' restaurant, MPD. Dual Groupe claims that it licensed its trademark to defendants on a royalty free basis for as long as Dual Groupe was employed to manage the restaurant MPD, According to the complaint, in January 2012 defendants ousted Dual Groupe as managers of MPD but continued to use Dual Groupe's trademark. Dual Groupe asserts that this constitutes trademark infringement and dilution in violation of the Lanham Act and New York state law. Dual Groupe seeks damages resulting from defendants' past unauthorized use of the Dual Groupe trademark.[1]

Defendants have moved to dismiss Dual Groupe's complaint for failure to state a claim and for lack of subject matter jurisdiction. Defendants argue that Dual Groupe's complaint does not properly allege that the unregistered trademark is entitled to protection because Dual Groupe does not assert prior use. Defendants state that Dual Groupe's alleged licensing of the trademark to defendants is insufficient to establish prior use by Dual Groupe because Dual Groupe does not allege it exercised quality control. Defendants also state that Dual Groupe lacks standing to sue because it has failed to comply with

---

**1.** Originally Dual Groupe also sought preliminary and permanent injunctions. However, at the February 22, 2013 oral argument plain- tiffs indicated that this relief was no longer applicable given that the restaurant which had been using the mark has been closed.

New York state publication requirements for limited liability companies. Finally, defendants argue that because the court should dismiss the federal claims for failure to state a claim, the court should decline exercising supplemental jurisdiction over the state law claims.

The court denies defendants' motion to dismiss because the complaint properly pleads that Dual Groupe owns the rights to MPD and has established that ownership through licensing. As the complaint alleges that the licensing agreement has been breached and defendants have made unauthorized use of Dual Groupe's mark, the complaint states a claim for trademark infringement and dilution. Defendants' contentions that the Management Agreement is fraudulent and that Dual Groupe has abandoned its right to the MPD through 'naked licensing' present factual contentions that cannot be resolved at the motion to dismiss stage.

Dual Groupe has not yet satisfied the publication procedures required to be a company authorized to do business in New York. As such, Dual Groupe would not be entitled to commence an action in New York state court, but it is not prevented from litigating in federal court. Even if the publication requirements barred Dual Groupe from maintaining a federal action, this is not a basis for dismissing Dual Groupe's complaint, as the proper course of action is to stay the case until the failure is cured.

Because the court is not dismissing Dual Groupe's federal cause of action, it is appropriate for the court to continue exercising supplemental jurisdiction over Dual Groupe's related state law claims.

### Legal Standard

To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a complaint must plead sufficient facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In deciding such a motion, a court must accept as true the facts alleged in the complaint, but it should not assume the truth of its legal conclusions. *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937. A court must also draw all reasonable inferences in the plaintiff's favor, and it may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the suit. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007). A court may also consider documents of which a plaintiff would have had actual notice as he drafted his complaint and which are integral to the claims set forth within it. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991).

### The Complaint

#### I. *THE PARTIES*

Plaintiff Dual Groupe is a limited liability corporation organized under the laws of the State of New York and is involved in the business of promoting and managing restaurants. Defendant Gans–Mex is a limited liability corporation organized under the laws of the State of New York and is an owner of several restaurants. Defendant Ginza is a limited liability corporation organized under the laws of the State of New York and was at all relevant times one of the owners of Gans–Mex. Defendant Brunetti was at all relevant times a member or managing member of Gans–Mex and Ginza.

#### II. *THE DECEMBER 21, 2009 AGREEMENT*

On December 21, 2009, Dual Groupe and Gans–Mex entered into a Management Agreement, signed by Brunitti on behalf of Gans–Mex. The Agreement contemplated the creation of a restaurant called "MPD." It provided that Dual Groupe would "de-

velop, operate and manage a new restaurant" in a space defendants owned at 73 Gansevoort Street, New York, New York. (par. 9). The Agreement further stated that Dual Groupe "shall have full control and discretion over the operations of the premises," and "shall have the right to control all aspects of the Restaurant including but not limited to promotions, entertainment, hiring and firing personnel, determining hours over such personnel and setting staff count." (par. 10; Management Agreement, ¶¶ 3.1, 3.11). The parties agreed on a formula for paying Dual Groupe management fees that was based on a varying percentage of the restaurant's gross receipts. (par. 11).

Of particular importance to the present action, the Agreement stated that so long as Dual Groupe was managing the restaurant, Dual Groupe would "license to [Gans–Mex] the use of the brand MPD on a royalty free basis at the Restaurant." (par. 11). The parties do not dispute that the trademark MPD is not registered with the United States Patent and Trademark Office.[2]

Dual Groupe "conceived and developed" a French–American restaurant under the MPD brand which opened in October 2010. (pars. 14, 15). MPD was very successful and as a result, in 2011, Dual Groupe earned management fees totaling $364,989.10. (par. 19). Around January 30, 2012, defendants unilaterally terminated the Management Agreement and removed Dual Groupe from its management position in order to avoid paying Dual Groupe management fees. (pars. 20, 24). Since the Management Agreement was terminated and Dual Groupe no longer managed the restaurant, the defendants' licensing rights to MPD were also terminated. (par. 25). However, defendants continued to use the trademark in connection with their restaurant and have "continued to market, promote and operate the restaurant under the name 'MPD Restaurant.'" (par. 26). On February 1, 2012, Brunetti registered the Internet domain name *"MPDRESTAURANT.COM"*. (par. 26).

### Defendants' Factual Allegations

Defendants dispute many of the complaint's factual allegations, which the court cannot adjudicate at the motion to dismiss stage. Specifically, defendants claim that the Management Agreement is fraudulent—Brunetti does not recall signing the agreement and defendants claim that the MPD concept had not been created at the time the agreement was allegedly signed. Defendants claim that they own the MPD trademark because they financed and created the elements of MPD and designed the logo, and chose the furniture, concept, and menu. According to defendants they terminated Dual Groupe because they caused MPD to lose its liquor license and Dual Groupe employees sexually harassed MPD employees. Finally, defendants claim that this lawsuit is part of Dual Groupe's campaign to sabotage defendants' business, which has included presenting MPD's vendors with slanderous information about defendants and threatening to sue the vendors if they continue business relations with MPD.

### The Legal Claims

Based on the previously mentioned allegations in the complaint, Dual Groupe asserts federal and state law causes of ac-

---

**2.** Dual Groupe filed an application with the United States Patent and Trademark Office (USPTO) to register MPD as their trademark. However, defendant's claim that Dual Groupe failed to submit an answer to defendant's Notice of Opposition to Plaintiff's application and thus the court entered a Default Judgment against Dual Groupe. Dual Groupe does not claim to have established ownership of the MPD trademark through its application to register with the USPTO.

tion: Trademark Infringement and False Designation of Origin pursuant to 15 U.S.C. § 1125(a); Trademark Dilution pursuant to 15 U.S.C. § 1125(c); Trademark Infringement and Unfair Competition pursuant to New York State law; and Trademark Dilution pursuant to New York State law.

## Discussion

### Causes of Action under the Lanham Act

#### Parties' Arguments

Defendants claim that Dual Groupe has no protected rights under the Lanham Act because the complaint only made a conclusory assertion that Dual Groupe owned MPD and never alleged prior use. According to the defendants, Dual Groupe made no prior use because it only used the MPD trademark *after* allegedly licensing MPD to defendants. Defendants argue that Dual Groupe also never made an independent use of MPD; instead, Dual Groupe only provided defendants' a service in *defendants'* use of MPD, Therefore, the Management Agreement could not have licensed use of MPD because at the time of the Agreement, Dual Groupe had no protected rights to license.

Defendants also claim that the alleged licensing agreement was a naked licensing because Dual Groupe, as licensor, does not allege that it controlled the quality of the MPD's food, menu, and decor. Defendants argue that the complaint's allegations that the Management Agreement gave Dual Groupe control over managing MPD is insufficient as the complaint needs to allege that Dual Groupe actually utilized its power to manage.

#### Legal Analysis

■ Plaintiff's claims of trademark infringement and dilution under the Lanham Act both require that plaintiff demonstrate it owns the mark in question. In order to state a claim for trademark infringement or false designation of origin pursuant to § 1125(a) of the Lanham Act, a plaintiff must allege that "(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale … or advertising of goods or services, (5) without the plaintiffs consent." *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 407 (2d Cir.2005). The plaintiff must also allege that the defendant's use of the mark is likely to cause confusion "as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services or commercial activities by [plaintiff]." *Id.*

■ Section 1125(c) of the Lanham Act provides a cause of action for trademark dilution by blurring or tarnishment. In order for a plaintiff to state a claim under this provision, the plaintiff must plead that it owns the mark, that the mark is famous and distinctive, and that defendant's actions dilute that mark. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2d Cir.2009).

■ For Dual Groupe to properly allege either cause of action it must therefore first allege ownership over the unregistered mark MPD. A plaintiff alleges ownership over an unregistered trademark through asserting that he made prior use of the trademark. This means that the plaintiff claims to have made the first use of the mark to identify his goods or service and continues to use the mark commercially. *See ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 147 (2d Cir.2007); *see also, Talk to Me Products, Inc. v. Larami Corp.*, 804 F.Supp. 555, 559 (S.D.N.Y.1992) ("The exclusive right to a distinctive mark belongs to the one who first uses it in connection with a particular line of business."). In addition to first use, the type of use a plaintiff must make is one that is "suffi-

ciently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,* 15 F.Supp.2d 389, 396 (S.D.N.Y.1998).

■ Contrary to defendants' arguments, a plaintiff can demonstrate prior use through licensing the trademark to a licensee. *Hawaii–Pacific Apparel Group, Inc. v. Cleveland Browns Football Co. LLC,* 418 F.Supp.2d 501, 506 (S.D.N.Y.2006) ("Use of the mark by a licensee to identify or distinguish goods is sufficient to create enforceable rights in favor of the licensor."). The licensor can establish prior use over a trademark even if the licensee makes the first and only use of the mark. 2 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 18.46 (4th ed. 2004) ("Ownership rights in a trademark ... can be acquired and maintained through the use of the mark by a controlled licensee even when the first and only use of the mark was made ... by the licensee.").

■ In order for the licensor to acquire and maintain ownership based on the licensee's use of the mark, the licensor must exercise some control over the licensee's use of the mark. *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.,* 277 F.3d 253, 259 (2d Cir.2002). Defendants appear to argue that Dual Groupe abandoned its mark through naked licensing to defendants. The party alleging that a trademark owner abandoned his rights bears the burden of proof and must present clear and convincing evidence to support this assertion. *Saratoga Vichy Spring Co., Inc. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir.1980). Whether a licensor has abandoned his rights to a mark by engaging in naked licensing depends on "whether the licensees' operations are policed adequately to guarantee the quality of the products sold under the mark."

*General Motors Corp. v. Gibson Chem. & Oil,* 786 F.2d 105, 110 (2d Cir.1986).

The Management Agreement provided that Dual Groupe "shall have full control and discretion over the operations of the premises" and "shall have the right to control all aspects of the Restaurant including but not limited to promotions, entertainment, hiring and firing personnel, determining hours over such personnel and setting staff count." (Comp. ¶ 10). Defendants claim that this is insufficient because there is no allegation that Dual Groupe actually exercised any control in fact. However, given the terms of the Agreement, defendants cannot satisfy their burden of proof by simply pointing to the complaint's failure to allege Dual Groupe actually exercised this control power.

Contrary to plaintiff's assertion, *Stanfield v. Osborne Indus.,* does not hold that a plaintiff must plead facts to show that it exercised quality control over the trademark, as that case was dismissed on summary judgment, not based on insufficiency of the complaint. 839 F.Supp. 1499 (D.Kan.1993). Plaintiffs are also incorrect in stating that *Dawn Donut Co. v. Hart's Food Stores, Inc.,* holds that a formal agreement is insufficient to establish quality control. 267 F.2d 358 (2d Cir.1959). Instead, *Dawn Donut Co.,* held that the absence of an express contract providing for inspection and control did not necessarily constitute a naked license, as a licensor may in fact have exercised control. *Id.* at 369. Whether Dual Groupe in fact exercised control over MPD is important, but it is not Dual Groupe's burden to plead the actual exercise of control in the complaint. Accordingly, the complaint provides sufficient allegation to support that Dual Groupe owned the trademark MPD.

*Publication Requirements*

Defendants claim that Dual Groupe cannot maintain an action in any New York

court because Dual Groupe has failed to satisfy the publication requirement for limited liability companies under § 206 of the New York Limited Liability Company Law ("LLCL"). Under New York law, this failure suspends the LLC's authority to "carry on, conduct or transact any business in this state." § 206 LLC. This failure would mean that pursuant to § 808 of LLCL, Dual Groupe could not maintain any suit "in any court of this state" until it obtains a certificate of authority in New York.

Dual Groupe argues that the failure to comply with the publication requirement does not restrict its access to federal courts. The statute's language stating that a noncompliant company cannot maintain any action "in any court of this state" appears to support Dual Groupe's contention. Cases also discuss the application of the statute as "condition[ing] access to *state* courts." *See Barklee Realty Co. v. Pataki*, 309 A.D.2d 310, 315, 765 N.Y.S.2d 599 (N.Y.App.Div.2003) (emphasis added).

Even if the requirements are applicable in federal court, the statute provides companies an opportunity to cure. New York courts have held that "subsequent compliance with the [publication requirement] warrants *nun pro func* application," and thus after complying with § 206 LLC, a plaintiff is treated as though they had standing at the time the suit was filed. *2004 McDonald Ave. Realty, LLC v. 2004 McDonald Ave. Corp.*, 25 Misc.3d 1204(A) at *3, 2007 WL 6889356 (N.Y.Sup.Ct. Kings County June 4, 2007); *see also In re Empire Equities Capital Corp.*, 2010 WL 1849391 (N.Y.Banc.Ct. May 6, 2010). Dual Groupe has submitted documentation indicating that it has already begun to satisfy the publication requirement, and expects to be completed soon. Therefore, the failure to satisfy the publication requirement at this point might require the court to stay proceedings until Dual Groupe completes this process, but it would not require dismissing this action. *See RMS Residential Props., LLC v. Naaze*, 28 Misc.3d 843, 845, 903 N.Y.S.2d 729, 730–31 (Nassau Co. Dist. Ct., June 16, 2010) (staying proceedings until plaintiff received a certificate of authority from the Secretary of the State). However, as it does not appear that this reporting requirement bars Dual Groupe from litigating in federal court, a stay is unnecessary.

*Supplemental Jurisdiction and State Law Claims*

The parties do not dispute that the court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because they arise from the same transaction or occurrence as the federal law claims. Given that this court is not dismissing Dual Groupe's federal law claims, the court will continue to exercise supplemental jurisdiction over the related state law claims.

### Conclusion

For the aforementioned reasons the motion to dismiss is denied.