Dugan v London Terrace Gardens, L.P. (2019 NY Slip Op 06578)





Dugan v London Terrace Gardens, L.P.


2019 NY Slip Op 06578


Decided on September 17, 2019


Appellate Division, First Department


Richter, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 17, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rosalyn H. Richter, J.P.
Judith J. Gische
Cynthia S. Kern
Peter H. Moulton, JJ.


603468/09 

[*1]William Dugan, et al., Plaintiffs-Respondents-Appellants,
v
London Terrace Gardens, L.P., Defendant-Appellant-Respondent.
William Dugan, et al., Plaintiffs-Respondents,
v
London Terrace Gardens, L.P., Defendant-Appellant, David Blech, et al., Respondents.



Plaintiffs and defendant appeal from the order of the Supreme Court, New York County (Lucy Billings, J.), entered November 22, 2017, which, to the extent appealed from, denied defendant's motion for summary judgment, and granted in part and denied in part plaintiffs' motion for summary judgment. Defendant appeals from the order of the same court and Justice, entered September 11, 2017, which, to the extent appealed from, expanded the originally certified definition of the class; the order of the same court and Justice, entered November 24, 2017, which granted defendant's motion for payments for interim past and ongoing use and occupancy by respondents David Blech and Margie Chassman, but declined to set the amount, and granted Blech and Chassman's cross motion for summary judgment on their claim for rent overcharge to the same extent as that granted to the class action plaintiffs in the order entered November 22, 2017, and the order of the same court and Justice, entered August 30, 2017, which denied defendant's motion to make certain interim payments to plaintiffs.




Borah Goldstein Altschuler Nahins & Goidel, P.C., New York [*2](Robert D. Goldstein and Paul N. Gruber of counsel), and Proskauer Rose LLP, New York (Richard M. Goldstein and Seth D. Fier of counsel), for appellant-respondent/appellant.
Himmelstein, McConnell, Gribben, Donoghue & Joseph LLP, New York (Ronald S. Languedoc, William Gribben, Kevin R. McConnell and Jesse Gribben of counsel), Emery Celli Brinckerhoff & Abady LLP, New York (Matthew Brinckerhoff of counsel), and Bernstein Liebhard LLP, New York (Joseph R. Seidman, Jr. of counsel), for respondents-appellants/respondents.



RICHTER, J.P.


These four appeals arise from consolidated class action litigations challenging the deregulation of hundreds of apartments at London Terrace Gardens (London Terrace), a 10-building housing complex in Manhattan. Plaintiffs are current and former London Terrace tenants, and defendant London Terrace Gardens, L.P. is the owner of the complex. London Terrace, which consists of approximately 1,000 units, was constructed in 1931, and was originally subject to rent control laws. Pursuant to the 1974 Emergency Tenant Protection Act, upon vacancy, rent controlled apartments in London Terrace became subject to rent stabilization. Since 1974, there has been a mix of rent stabilized and rent controlled apartments in the complex.
Beginning in 1993, defendant began to deregulate apartments in London Terrace. The Rent Regulation Reform Act of 1993 allowed building owners to deregulate rent-regulated apartments where rents and/or occupants' incomes exceeded certain statutory thresholds. However, in 2009, the Court of Appeals made it clear that building owners were not entitled to deregulate units while they were simultaneously receiving tax benefits under New York City's J-51 tax abatement and exemption program (Roberts v Tishman Speyer Props., L.P., 13 NY3d 270, 279-280 [2009])[FN1]. Further, apartments in buildings receiving these tax benefits "must be registered with the State Division of Housing and Community Renewal (DHCR), and are generally subject to rent stabilization for at least as long as the J-51 benefits are in force (see 28 RCNY at 5-03 [f])" (id. at 280; see Rent Stabilization Law [RSL] [Administrative Code of City of NY] § 26-504[c] [rent stabilization law shall apply to dwelling units in a building receiving J-51 benefits]).
On July 1, 2003, after performing qualifying improvements to the property, defendant began receiving J-51 tax benefits [FN2]. Prior to that date, defendant had already deregulated approximately 95 apartments in the complex. However, defendant did not, as required by law, return these previously deregulated units to rent regulation. Further, after the J-51 benefits were conferred, defendant continued to deregulate additional apartments, despite the fact that the complex was receiving J-51 benefits. Defendant charged market rents for the deregulated units, did not treat tenants in those units as rent regulated, did not register the apartments with DHCR, and did not follow the rent laws in calculating the proper rents to be charged.
On November 13, 2009, shortly after Roberts was decided, plaintiff William Dugan and nine other London Terrace tenants brought this class action alleging that defendant wrongfully deregulated apartments while receiving J-51 tax benefits, and failed to return previously deregulated apartments to rent stabilization when the J-51 benefits commenced. On December 8, 2009, plaintiff James Doerr brought a separate class action against defendant making similar allegations. In both complaints, plaintiffs alleged that, as a result of defendant's wrongful acts, they were denied rent-regulated status and were charged amounts in excess of the legal rents for their units. Plaintiffs sought, inter alia, a declaration that their apartments are subject to rent regulation, and monetary damages for rent overcharges. Defendant answered and asserted various counterclaims and affirmative defenses, including that the action was barred by the statute of limitations, and that Roberts should not be applied retroactively.
The two actions were subsequently consolidated and a class was certified. Plaintiffs then moved to dismiss defendant's counterclaims and affirmative defenses, and sought partial summary judgment seeking, inter alia, a determination of the proper methodology for calculating the legal rents and the amount of any rent overcharges. Defendant cross-moved for summary judgment seeking, inter alia, dismissal of the complaint on the ground that Roberts is not retroactive, dismissal of the complaint as time-barred, and a declaration on the proper methodology to calculate rents. Both plaintiffs and defendant submitted their own proposed method for calculating rents and overcharges. In a decision entered November 22, 2017, the motion court rejected defendant's statute of limitations defense, and concluded that Roberts may be applied retroactively. The court also set forth a methodology for calculating the legal rents and the amount of any overcharges. Both plaintiffs and defendant appeal from the motion court's order.
Defendant maintains that when it deregulated the affected units, it was relying in good faith on DHCR's pre-Roberts interpretation of the relevant statutes, and that applying Roberts under those circumstances would offend due process. At the outset, defendant is collaterally estopped from advancing its due process argument. We rejected this claim in Matter of London Terrace Gardens, L.P. v City of New York (101 AD3d 27, 31-32 [1st Dept 2012], lv denied 21 NY3d 855 [2013]), a suit where defendant unsuccessfully tried to withdraw from the J-51 program. Although the London Terrace Gardens action arose in a different context, the due process issue decided by the Court there was identical to the one before us now, and defendant had a full and fair opportunity to litigate the issue.
In any event, defendant's argument fails on the merits. In Gersten v 56 7th Ave. LLC (88 AD3d 189, 198 [1st Dept 2011]), this Court held that Roberts should be applied retroactively because the decision simply interpreted a statute that had been in effect for a number of years, and did not establish a new principle of law. Since then, we have consistently adhered to Gersten, and have specifically rejected due process challenges to the retroactivity of Roberts (see Matter of London Terrace Gardens, 101 AD3d at 31-32; Roberts v Tishman Speyer Props., L.P., 89 AD3d 444, 445-446 [1st Dept 2011] [Roberts II]).
Defendant attempts to distinguish Gersten and Roberts II, on the ground that, unlike the building owners in those cases, defendant explicitly relied on DHCR's interpretation of the decontrol statutes at the time it decided to enter the J-51 program. However, we rejected this very same argument in Matter of London Terrace Gardens (101 AD3d at 31-32), and defendant fails to persuasively distinguish that case (see also Gurnee v Aetna Life & Cas. Co., 55 NY2d 184, 192 [1982], cert denied 459 US 837 [1982] [where Court of Appeals retroactively applied a judicial decision rejecting the Insurance Department's interpretation of the statute, stating that a judicial decision construing the words of a statute . . . does not constitute the creation of a new legal principle"). Thus, defendant's challenge to the retroactivity of Roberts is unavailing.
On June 14, 2019, New York State enacted the Housing Stability and Tenant Protection [*3]Act of 2019 (L 2019, ch 36)(HSTPA), landmark legislation making sweeping changes to the rent laws and adding greater protections for tenants throughout the State [FN3]. Of relevance to this appeal is Part F of the HSTPA, which amended RSL § 26-516 and CPLR 213-a, which govern claims of rent overcharge and the statute of limitations for bringing such claims. The legislation directed that the statutory amendments contained in Part F "shall take effect immediately and shall apply to any claims pending or filed on or after such date" (HSTPA, Part F, § 7). Because plaintiffs' overcharge claims were pending on the effective date of Part F of the HSTPA, the changes made therein are applicable here (see Matter of Kandemir v New York State Div. of Hous. & Community Renewal, 4 AD3d 122 [1st Dept 2004]; Matter of Pechock v New York State Div. of Hous. & Community Renewal, 253 AD2d 655 [1st Dept 1998]; Zafra v Pilkes, 245 AD2d 218 [1st Dept 1997]).
We reject defendant's contention that the complaint should be dismissed as time-barred. The newly-enacted CPLR 213-a provides that "an overcharge claim may be filed at any time," however "[n]o overcharge penalties or damages may be awarded for a period more than six years before the action is commenced." Likewise, the amended version of RSL § 26-516(a)(2) provides that an overcharge complaint "may be filed with [DHCR] or in a court of competent jurisdiction at any time, however any recovery of overcharge penalties shall be limited to the six years preceding the complaint." Because both of these statutes provide that an overcharge complaint can be brought "at any time," plaintiffs' claims are timely. However, they may recover for overcharges only as far back as November 13, 2003, six years before the commencement date.
Both plaintiffs and defendant raise various challenges to the motion court's methodology for calculating the legal rents and the amount of any overcharges. The HSTPA made significant changes in how rents and overcharges should be determined. RSL § 26-516 now explicitly provides that a court "shall consider all available rent history which is reasonably necessary" to investigate overcharges and determine the legal regulated rent (RSL § 26-516[a], [h]). Thus, with respect to overcharge claims subject to the HSTPA, these provisions resolve a split in this Department as to what rent records can be reviewed to determine rents and overcharges in Roberts cases. In Taylor v 72A Realty Assoc., L.P. (151 AD3d 95 [1st Dept 2017], lv granted — NY3d — [2018]), the Court unanimously concluded that a court is permitted to examine the entire rental history of an apartment to ensure that landlords do not benefit from having collected an illegal market rent. Other panels of this Court, by split benches, reached a different conclusion, limiting review of the rental history to the four-year period preceding the filing of the overcharge complaint (see Raden v W 7879, LLC, 164 AD3d 440 [1st Dept 2018], lv granted — NY3d — [2018]; Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 164 AD3d 420, 424 [1st Dept 2018], appeal dismissed 32 NY3d 1085 [2018], lv granted — NY3d — [2019]). The new statute resolves this conflict, and makes clear that courts must examine all available rent history necessary to determine the legal regulated rent.
The newly-amended RSL § 26-516(a) also provides that the legal regulated rent for purposes of determining most overcharges "shall be the rent indicated in the most recent reliable annual registration statement filed and served upon the tenant six or more years prior to the most recent registration statement, . . . plus in each case any subsequent lawful increases and [*4]adjustments"(RSL § 26-516[a] [emphasis showing the added language])[FN4]. Unlike the previous version, the new statute requires examination of the "most recent reliable" registration statement that was not only filed but also "served upon the tenant" "six or more years" before the most recent statement.
The newly-enacted RSL § 26-516(h) sets forth a comprehensive set of nonexclusive records that a court shall consider in determining legal rents and overcharges. Among the documents a court must examine are: (i) rent registration and other records filed with DHCR or other government agencies, regardless of the date to which the information refers; (ii) orders issued by government agencies; (iii) records maintained by the owner or tenants; and (iv) public records kept in the regular course of business by any government agency. The new statute further provides that "[n]othing [therein] shall limit the examination of rent history relevant to a determination as to . . . whether the legality of a rental amount charged or registered is reliable in light of all available evidence" (RSL § 26-516[h][i]).
The motion court based its methodology for calculating the legal rents and the amount of any rent overcharges on the law in effect at the time. That law has changed, and significantly so. In view of the comprehensive changes made by the HSTPA with respect to the proper method of calculating legal rents and overcharges, we must remand the matter to the motion court so that it can, in the first instance, set forth a methodology consistent with the HSTPA. We recognize that this action has been pending for an extended period of time, and that our decision may involve further motion practice. Nevertheless, because the legislature has made changes to the law that directly impact this case, and has made those changes applicable to this pending litigation, a remand is appropriate. The motion court shall give the parties an opportunity to present additional evidence on their respective summary judgment motions with respect to the calculation of rents and any overcharges under the HSTPA.[FN5]
We find no merit to defendant's claim that applying the amendments to RSL § 26-516 and CPLR 213-a to this pending litigation violates due process. To begin, the legislature expressly made the amendments applicable to pending claims, and legislative enactments carry "an exceedingly strong presumption of constitutionality" (Barklee Realty Co. v Pataki, 309 AD2d 310, 311 [1st Dept 2003] [internal quotation marks omitted], appeal dismissed 1 NY3d 622 [2004], lv denied 2 NY3d 707 [2004]). Further, it is well settled that absent deliberate or negligent delay, "[w]here a statute has been amended during the pendency of a proceeding, the application of that amended statute to the pending proceeding is appropriate and poses no constitutional problem" (Matter of St. Vincent's Hosp. & Med. Ctr. Of N.Y. v New York State Div. of Hous. & Community Renewal, 109 AD2d 711, 712 [1st Dept 1985], affd 66 NY2d 959 [1985]; accord Matter of Kass v Club Mart of Am., 160 AD2d 1148 [3d Dept 1990]; Jonathan Woodner Co. v Eimicke, 160 AD2d 907 [2d Dept 1990]).
In Matter of Schutt v New York State Div. of Hous. & Community Renewal (278 AD2d 58 [*5][1st Dept 2000], lv denied 96 NY2d 715 [2001]), this Court found the petitioners' fair market rent appeal untimely based on the four-year statute of limitations in the newly-enacted Rent Regulation Reform Act of 1997 (RRRA). The petitioners argued that applying the RRRA's limitations period to pending cases violated due process because it "depriv[ed] them of the benefit of pre-RRRA rent regulation provisions law more favorable to their claims" (id. at 58). The Court found no due process infirmity because "rent regulation does not confer vested rights" (id., citing I.L.F.Y. Co. v City Rent & Rehabilitation Admin., 11 NY2d 480 [1962]).
Likewise, in Matter of Brinckerhoff v New York State Div. of Hous. & Community Renewal (275 AD2d 622 [1st Dept 2000], lv dismissed 96 NY2d 729 [2001], lv denied 96 NY2d 712 [2001]), this Court applied the newly-enacted four-year limitations period to the petitioners' pending rent overcharge complaints, rejecting their claim that the retroactive application of the amendments denied them due process. The same result should apply here, and we find that defendant's due process rights are not impaired by applying the new amendments to plaintiffs' pending overcharge claims (see American Economy Ins. Co. v State of New York, 30 NY3d 136 [2017], cert denied — US &mdash, 138 S Ct 2601 [2018]). Finally, to the extent defendant may be asserting a procedural due process claim, our decision to remand this matter for presentation of evidence as to how to calculate rents and overcharges under the HSTPA would obviate such a claim.
Defendant separately appeals from three other orders issued by the motion court. First, defendant challenges a September 11, 2017 order that expanded the originally certified definition of the class. In the initial certification order, the class was defined as "all past and current tenants of London Terrace Gardens who have been charged or continue to be charged deregulated rents during defendant's receipt of J-51 tax benefits." In the class expansion order, the class was redefined as "all past and current tenants of London Terrace Gardens who have resided in units that were deregulated during defendant's receipt of J-51 tax benefits." Thus, whereas the original class included only tenants who were charged deregulated rents during the J-51 period, the proposed new class would encompass tenants who moved in after the J-51 benefits period ended and reside in apartments that, at some point in the past, had been wrongfully treated as deregulated.
CPLR 902 provides that a class action "may be altered or amended before the decision on the merits." However, that provision also states that "[an] action may be maintained as a class action only if the court finds that the prerequisites under [CPLR] 901 have been satisfied." Those requirements are generally referred to as "numerosity, commonality, typicality, adequacy of representation and superiority" (City of New York v Maul, 14 NY3d 499, 508 [2010]). CPLR 902 further requires the court to consider a range of factors before certifying a class.
Here, the motion court improvidently exercised its discretion in expanding the class. The court's order failed to analyze whether class action status was warranted based on the criteria set forth in CPLR 901 and CPLR 902. Conducting that analysis ourselves, we find that the redefined class represents such a fundamental change in the theory of plaintiffs' case that expansion of the class would be improper. When the class was originally certified, plaintiffs maintained, and the court agreed, that its members were tenants who received deregulated leases while the complex was receiving J-51 benefits. The expanded class, however, would include tenants who never lived in the complex during defendant's receipt of J-51 benefits, and who received regulated leases for their tenancies. Thus, the legal issues for this group of tenants are separate and distinct from those of the original class.
In determining whether an action should proceed as a class action, the court must consider the "extent and nature of any litigation concerning the controversy already commenced by . . . members of the class" (CPLR 902[3]). This class action litigation was commenced over nine years ago, and has spawned expansive motion practice. Expanding the class to add [*6]members whose tenancies involve different legal issues from the original class would be inefficient at this late stage of the litigation and would unduly prejudice defendant. Thus, the court's order expanding the class should be reversed, and the class shall remain as originally certified.[FN6]
Next, defendant appeals from a November 24, 2017 order wherein the motion court ordered the payment of interim past and ongoing use and occupancy by the tenants residing in Apartment 16ABEF, but failed to set the amount [FN7]. This apartment was created in 2005 by combining Apartments 16AB and 16EF, both of which were exempt from rent stabilization at the time defendant began receiving J-51 benefits in July 2003. We modify the court's order to the extent of requiring payment of interim past and ongoing use and occupancy in the amount of $11,075 per month. This amount represents the sum of the respective rents for Apartments 16AB and 16EF at or around the time the J-51 benefits began [FN8]. Although it is undisputed that Apartment 16ABEF, and the two apartments that were combined to form it, were all improperly treated as deregulated while the building was receiving J-51 benefits, for the reasons discussed above, we vacate that part of the motion court's order setting forth the methodology for calculating the legal rents and the amount of any overcharges. The matter is remanded for the court to set forth a methodology for calculating rents and overcharges for Apartment 16ABEF consistent with the HSTPA.
Finally, defendant appeals from an August 30, 2017 order wherein the motion court denied its motion to make certain interim payments to plaintiffs in an effort to mitigate any ultimate award of prejudgment interest. Defendant sought to condition its payments on the requirement that plaintiffs repay some or all of those amounts if the court ultimately found in defendant's favor on the issues of liability or the amounts of any overcharges owed to a particular plaintiff. The motion court properly denied the relief requested by defendant. The court was not required to fashion a remedy outside of the CPLR, or grant a motion that addressed only defendant's concerns. To the extent this conclusion may be inequitable, defendant's remedy lies not with this Court, but with the legislature.
Accordingly, the order of the Supreme Court, New York County (Lucy Billings, J.), entered November 22, 2017, which, to the extent appealed from, denied defendant's motion for summary judgment, and granted in part and denied in part plaintiffs' motion for summary judgment, should be modified, on the law, to vacate that part of the order setting forth the methodology for calculating the legal rents and the amount of any overcharges, and otherwise affirmed, without costs, and the matter remanded for the court, after further submissions from the [*7]parties, to set forth a methodology for calculating rents and overcharges consistent with the HSTPA; the order of the same court and Justice, entered September 11, 2017, which, to the extent appealed from, expanded the originally certified definition of the class, should be reversed, on the law, without costs, and the class should remain as originally certified; the order of the same court and Justice, entered November 24, 2017, which granted defendant's motion for payments for interim past and ongoing use and occupancy by respondents David Blech and Margie Chassman, but declined to set the amount, and granted Blech and Chassman's cross motion for summary judgment on their claim for rent overcharge to the same extent as that granted to the class action plaintiffs in the order entered November 22, 2017, should be modified, on the law and the facts, to set the amount of interim past and ongoing use and occupancy at $11,075 per month, and to vacate that part of the order setting forth the methodology for calculating the legal rents and the amount of any overcharges, and otherwise affirmed, without costs, and the matter remanded for the court, after further submissions from the parties, to set forth a methodology for calculating rents and overcharges consistent with the HSTPA; and the order of the same court and Justice, entered August 30, 2017, which denied defendant's motion to make certain interim payments to plaintiffs, should be affirmed, without costs.
All concur.
Order, Supreme Court, New York County (Lucy Billings, J.), entered November 22, 2017, modified, on the law, to vacate that part of the order setting forth the methodology for calculating the legal rents and the amount of any overcharges, and otherwise affirmed, without costs, and the matter remanded for the court, after further submissions from the parties, to set forth a methodology for calculating rents and overcharges consistent with the HSTPA; order, same court and Justice, entered September 11, 2017, reversed, on the law, without costs, and the class should remain as originally certified; order, same court and Justice, entered November 24, 2017, modified, on the law and the facts, to set the amount of interim past and ongoing use and occupancy at $11,075 per month, and to vacate that part of the order setting forth the methodology for calculating the legal rents and the amount of any overcharges,
and otherwise affirmed, without costs, and the matter remanded for the court, after further submissions from the parties, to set forth a methodology for calculating rents and overcharges consistent with the HSTPA; and order, same court and Justice, entered August 30, 2017, affirmed, without costs.
Opinion by Richter, J.P. All concur.
Richter, J.P., Gische, Kern, Oing, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: SEPTEMBER 17, 2019
CLERK



Footnotes

Footnote 1: Under the J-51 program, a building owner who makes qualifying improvements to its property is eligible to receive tax abatements and exemptions.

Footnote 2: The J-51 benefits ended on June 30, 2014.

Footnote 3: At the request of this Court, the parties submitted letter briefs on how the HSTPA affects the issues in this appeal.

Footnote 4: Ordinarily, a landlord must file annual registration statements which state the current rent for each rent stabilized apartment, and provide each tenant then in occupancy with a copy of that statement (RSL § 26—517[f]).

Footnote 5: Although some of the motion court's conclusions on the proper methodology were correct under the old law, the HSTPA contains broader language, and the motion court must determine whether those prior rulings are impacted by the new law.

Footnote 6: Although the number of class members in the originally certified class may be impacted as a result of the statutory amendments, the definition of the class should remain the same.

Footnote 7: Defendant had previously commenced a summary nonpayment proceeding against these tenants, and the tenants answered and alleged rent overcharges. The summary proceeding was then consolidated with the class action.

Footnote 8: Defendant submitted a January 31, 2004 security deposit report indicating that the monthly rent for Apartment 16AB was $5,575, and a lease dated June 17, 2003 showing the monthly rent for Apartment 16EF was $5,500.